THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
LARRY V. VALDERY, Defendant-Appellant.

Third District   No. 77-121

Opinion filed October 31, 1978.

Mary Robinson, of State Appellate Defender's Office, of Elgin, for appellant.

Edward F. Petka, State's Attorney, of Joliet (James E. Hinterlong and John X. Breslin, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal from a judgment of conviction entered by the circuit court of Will County pursuant to a guilty verdict rendered after a jury trial.

On June 27, 1973, a young Negro male entered Jax Roast Beef restaurant in Joliet. He read the menu, placed an order, decided he did not have enough money to pay for what he ordered and then changed his order. When the cashier, Ann Marie Walker, returned to her cash register after getting approval of the overring, the customer threw a purple bag onto the open cash register drawer, pointed a pistol at the cashier and demanded that she put the money from the register into the bag. After she had done that, he grabbed the bag from her and left the restaurant.

While the customer was in the restaurant he was observed by the manager, Ken Swearingen, and the cook, George Nichols. Walker, Swearingen, and Nichols identified the defendant from the photographs shown them. Defendant had a distinctive cross-shaped tattoo on his forehead and a heart-shaped tattoo above his right elbow.

Larry Valdery was arrested for armed robbery on February 28, 1974. An indictment was returned on May 16, 1974. Defendant posted bond on June 19, 1974. The People filed a motion asking that a defense attorney be appointed for defendant on September 24, 1974. This motion was denied because defendant had posted bond. Trial was held November 4, 1974, and post-trial motion hearing and sentencing hearing were held on December 13, 1974. Notice of appeal was filed on December 17, 1974. The record was filed June 23, 1975. On July 8, 1975, Valdery asked that an appeal bond be set. He filed motions for an extension of time to file his brief on July 28, 1975, August 7, 1975, September 2, 1975, and October 8, 1975. On October 22, 1975, the People asked that Valdery's bond be revoked. On October 31, 1975, Valdery's brief was filed.

The People requested extensions of time to file their briefs on December 4, 1975, January 12, 1976, January 26, 1976, February 9, 1976, February 17, 1976, and February 24, 1976. The People's brief was filed on February 27, 1976.

Oral argument was held May 11, 1976, and a decision was rendered on August 31, 1976. The conviction was reversed because Valdery had been forced to trial without benefit of court-appointed counsel (*People v.*

Valdery (1976), 41 Ill. App. 3d 201, 354 N.E.2d 7). Mandate was issued September 22, 1976.

On October 7, 1976, the public defender was appointed and discovery was ordered. On November 17, 1976, Valdery was again released on bail.

The People's discovery was filed on November 18, 1976, and the defense discovery was filed on December 6, 1976. Valdery also filed a motion for a bill of particulars on December 20, 1976, and a motion to summon out-of-State witnesses. A motion to suppress identification and another to dismiss the indictment was filed on January 10, 1977.

The second trial began January 10, 1977. Defendant was again convicted January 17, 1977.

Defendant raises two issues on appeal: (1) whether due process precludes his conviction because three and one-half years elapsed between the date of the offense and the time of the second trial with the fundamental safeguards of assistance of counsel and ability to subpoena witnesses and where that delay substantially prejudiced defendant's ability to present a defense, (2) whether defendant was denied a fair trial by the prosecutor's comments during closing arguments in which he personally vouched for the credibility of the State's witness, and, without support in the facts adduced at trial, repeatedly accused defendant of committing other crimes, accused defendant's father of destroying evidence, and accused defense witnesses of suborning perjury.

It is the opinion of this court that this cause should be remanded for a new trial. We find that the closing arguments of the prosecutor were improper and highly prejudicial.

Before we discuss that, however, we wish to comment upon the first issue raised by defendant. The United States Supreme Court addressed itself to that issue in Barker v. Wingo (1972), 407 U.S. 514, 33 L. Ed. 2d 101, 92 S. Ct. 2182. Justice Powell discussed the right of speedy trial from the viewpoint of both the prosecution and the defense. He reiterated, and we wish to reaffirm, that the constitutional rights of the citizens of the United States are of primary importance, and are not to be abridged.

Justice Powell applied a balancing test to the situation presented to him in order to determine whether the right to speedy trial had been denied. The four factors which he considered were: (a) the length of the delay; (b) the reasons for the delay; (c) the defendant's demand for a speedy trial; and (d) the prejudice to the defendant caused by the delay.

The delay between arrest and the second trial in Barker v. Wingo was five years. The delay was caused by certain procedural matters and because Barker appealed his first conviction. At the second trial, Barker's witnesses suffered memory lapses which the court found to be immaterial.

■█ In the instant case we find a delay of 3½ years with a large portion of that delay caused by defendant. Further, while we do find memory lapses, we also find that they were adequately explained and therefore do not believe that they were prejudicial to defendant. We fail to find that defendant's reliance on *Barker v. Wingo* is well taken but on the contrary as we analyze the case it refutes his contention that he was denied the right to a speedy trial.

The second issue raised by defendant is one of grave concern to this court, and we strongly believe that appellate courts have too often been asked to rule on this matter.

The State's Attorney has an ethical duty to the People of the State of Illinois, including all defendants prosecuted by him, to insure that a fair trial is accorded to the accused. (*Hall v. United States* (5th Cir. 1969), 419 F.2d 582.) While the State's Attorney must diligently prosecute each case before him, he may never disregard the constitutional right of a fair and impartial trial or the search for truth which is an inherent part of justice.

■█ The State's Attorney represents the People of the State of Illinois in the courtroom. The words he speaks carry the authority of the People and of the State. Thus, the State's Attorney must choose his words carefully so that he does not use that authority to persuade a jury that there is greater authenticity in what he says than in what the defense says. It is the duty solely of the jury to determine the credibility of the witnesses and guilt or innocence of the accused; it is not the privilege of the prosecutor.

In the instant case the prosecutor, in remarks regarding the restaurant employees, stated, "* * * in my mind * * * the equality [*sic*] and integrity of the three witnesses * * * have never been higher. I have never had contact with people who have come forth and testified as witnesses who have had the level of integrity and character of those people and I'm particularly impressed. * * * They have shown to me a high level of responsibility coming forth and testifying as they have and I hope that you're as impressed with them as I have been." He made further remarks about their integrity and his belief in their testimony.

● 3 These remarks are highly prejudicial because they place the integrity of the office of the State's Attorney behind the credibility of the witnesses. The possibility that a jury might then determine that the witnesses for the State were more credible than the witnesses for the defense creates an unfair advantage for the State and is prejudicial to the accused.

■█ In addition to those remarks, the prosecutor stated that defendant, while he was in Joliet, "* * * began committing crimes and we know of one of them and he was apprehended for one of them." This is clearly without support in the record. It is plain error for a prosecutor to imply that a defendant has committed other crimes than the one for which he is

on trial. *People v. Thomas* (1974), 22 Ill. App. 3d 854, 318 N.E.2d 342; *People v. Weathers* (1975), 62 Ill. 2d 114, 338 N.E.2d 880.

The prosecutor also characterized defendant's alibi defense as a fabrication. He also called defense witnesses liars. This has been consistently condemned. *People v. Beier* (1963), 29 Ill. 2d 511, 194 N.E.2d 280.

The prosecutor in the instant case also suggested that defendant's father had set fire to the business office which contained records which would have aided in the determination of the credibility of the alibi witnesses. There was no support in the record for such accusations. We must condemn such a tactic.

The State, in its brief, has attempted to characterize the remarks of the prosecutor as harmless and has cited to us a number of cases wherein improper remarks were held not to be reversible because the weight of the evidence would have resulted in conviction regardless of the remarks. *People v. Berry* (1960), 18 Ill. 2d 453, 165 N.E.2d 257; *People v. Davis* (1970), 46 Ill. 2d 554, 264 N.E.2d 140; *People v. Nilsson* (1970), 44 Ill. 2d 244, 255 N.E.2d 432.

■■ We fail to see how the remarks made in the instant case can be considered anything but prejudicial. We believe that these remarks were calculated to prejudice the jury against defendant. We make no comment on the evidence itself. We find that the remarks of the prosecutor in his closing statements were so highly prejudicial that they denied defendant a fair and impartial trial.

For the reasons stated above, the judgment of the circuit court of Will County is hereby reversed and the cause is remanded for new trial.

Reversed and remanded.

BARRY, P. J., and ALLOY, J., concur.