THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SHEREE ARTEMAN, Defendant-Appellant.

Fourth District No. 4—86—0364

Opinion filed December 19, 1986.

Rex L. Reu, of Thomson, Weintraub & Thompson, of Bloomington, for appellant.

Ronald C. Dozier, State's Attorney, of Bloomington (Kenneth R. Boyle, Robert J. Biderman, and Timothy J. Londrigan, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GREEN delivered the opinion of the court:

On April 22, 1986, defendant, Sheree Arteman, was found guilty of two counts of prostitution (Ill. Rev. Stat. 1983, ch. 38, par. 11—14) following a jury trial in the circuit court of McLean County. She was subsequently fined $200 on each count and was given concurrent sentences of 12 months' probation. She appeals, contending that the trial court erroneously admitted testimony of a corroborative out-of-court prior statement of identification. We affirm.

Dale E. Layten was the State's only witness. He testified that he had been a customer at a Bloomington business called "Sexy Lingerie" 10 to 12 times between the summer of 1984 and April 1985 and that, on each visit, he would pay from $30 to $50 to select a female employee to model lingerie. He further testified that, in addition, he would pay the model $40 to $60 to perform cunnilingus on her and, usually, to receive a masturbatory massage. Layten referred to three different occasions when he paid for sessions with a black employee named "Monique." He stated that these sessions took place "along in January" and "probably into February and into April" of 1985. He identified the defendant as the model who used the name "Monique."

Layten testified that the Bloomington police department contacted him in September 1985 about his activities at Sexy Lingerie. Layten said that under a plea agreement with the State's Attorney, he made a statement to the police and testified before a grand jury in exchange for being charged with and pleading guilty to only one count of patronizing a prostitute, being fined $200, and receiving court supervision for one year.

On cross-examination, Layten was questioned about testimony he had given before the grand jury on October 17, 1985. On that day, he had been asked whether he recognized a black woman, who was identified as defendant, outside the grand jury room and he had answered that he had not recognized her. Layten explained that he had not known whether defendant was the woman outside the grand jury room because he "didn't get that good a look at her." On redirect examination, Layten testified, over objection, that earlier that day, before the trial had begun, he had recognized defendant when he was sitting outside in the hall and that he told the State's Attorney that he had recognized her when he subsequently met with the State's Attorney, still prior to the commencement of the trial.

Rosetta S. Grant was called to testify on behalf of defendant. Grant testified that she had worked at Sexy Lingerie from April 1984 until the summer of 1984 and from October 1984 through May 1985. She stated that she was also a bookkeeper there and that one of her duties was to schedule models for work. She said that none of the models used their real names, that two different black models, one of whom was defendant, used the name "Monique," and that defendant did not work at Sexy Lingerie until April 1985, but that the other model using the name "Monique" worked at Sexy Lingerie through the end of 1984 and as a substitute in early 1985. Grant further testified that both black models had worn wigs and had similar voices. On cross-examination, Grant admitted that work schedules indicated that "Monique" was scheduled to work on March 29, 1985, and March 30, 1985, and stated that defendant might have begun working at Sexy Lingerie during the last part of March 1985. Work schedules prior to March 29, 1985, were not produced.

Defendant testified that although she was scheduled to work at Sexy Lingerie on March 29 and March 30, she first worked there on April 2, 1985, and that during the four months she worked there, she had three modeling sessions with Dale Layten. She stated that the first session occurred around April 10 and that Layten offered her $100 for oral sex. She further stated that she refused, but indicated that she would have been willing to stay in that room to change the outfits she was modeling if he paid her $30. She testified that she had a second session with Layten during the last half of May. At that session, she stated that Layten asked her to describe areas of her body to him after she had started to change into the outfits and that she did so. She further testified that at the third session, which occurred during the last week of June, she began "shadow dancing" for Layten, which she explained involved dancing behind a cloth screen while a light projected her shadow onto the screen. She stated that Layten asked her to bring herself to an orgasm and that she agreed to and finished the routine behind the screen. She then stated that Layten bought her undergarments and started to "orally clean them." She further stated that she then started to laugh at him and that he became angry and left. She denied that he ever performed oral sex on her.

In rebuttal, Layten was recalled and testified that the first time he had a session with "Monique" could have possibly been as late as February 1985. He further testified that "Monique" had never refused to allow him to perform oral sex on her, that he never asked her to have a self-induced orgasm, and that he did not "lick her un-

derwear."

■ Defendant argues that the admission of Layten's out-of-court identification of defendant on the day of trial was erroneous. The State argues, however, that the admission of evidence concerning a prior out-of-court identification is proper when the declarant is subject to in-court cross-examination.

In *People v. Rogers* (1980), 81 Ill. 2d 571, 411 N.E.2d 223, the Illinois Supreme Court held that a composite sketch which had been composed on the night that an armed robbery had occurred was properly admitted into evidence as corroboration of the victim's in-court identification of defendant. The legislature subsequently added section 115—12 to the Code of Criminal Procedure of 1963. It states:

"Substantive Admissibility of Prior Identification. A statement is not rendered inadmissible by the hearsay rule if (a) the declarant testifies at the trial or hearing, and (b) the declarant is subject to cross-examination concerning the statement, and (c) the statement is one of identification of a person made after perceiving him." Ill. Rev. Stat. 1983, ch. 38, par. 115—12.

Defendant argues that despite the lack of any provision in section 115—12 as to when the identification thereby freed from hearsay objection was made, the legislature did not intend the section to concern identification made close to the time of trial. She notes that (1) the *Rogers* court cited, as a reason for allowing testimony of a prior identification, the likelihood that the mind of the witness making an in-court identification would have been less conditioned to make an identification than at trial, (2) a statement by Representative Timothy Johnson in the Illinois House of Representatives made prior to the vote on the bill which became section 115—12 that a reason for the legislation was the greater ability of a witness to make an accurate identification when the identification was made closer to an event, (3) the statement in a noted text on Illinois evidence that section 115—12 had as its source Federal Rule of Evidence 801(d)(1)(C) (E. Cleary & M. Graham, Illinois Evidence sec. 611.16, at 406 (4th ed. 1984)), and (4) recognition by the House and Senate Committees considering Rule 801(d)(1)(C) that the basis for that rule is the general agreement that an earlier out-of-court identification is more likely to be accurate than a subsequent in-court identification. M. Graham, Federal Evidence sec. 801.11, at 725-28 (2d ed. 1986).

However, a stronger argument is presented to show that section 115—12 was not intended to be so limited. The *Rogers* court pronounced a rule that upon an in-court identification being made that the accused was the person committing the offense, evidence then be-

comes admissible that the identifying witness has also made an out-of-court identification of the accused as the culprit. (*People v. Rogers* (1980), 81 Ill. 2d 571, 579, 411 N.E.2d 223, 227.) No mention was made that the prior identification could not have been made shortly before the in-court identification. Section 115—12 states nothing which prohibits the prior identification to have been very recent to the in-court identification nor does Rule 801(d)(1)(C) contain any such requirement. Because neither *Rogers*, section 115—12, nor Rule 801(d)(1)(C) expresses any requirement for any substantial interval between the prior identification and the in-court identification, we conclude that none is required.

As indicated in *Rogers*, few types of identification can be as suggestive as that made in open court where the defendant sits at table with counsel. Most prior identifications, although recent, have a greater incidence of reliability than that made in court. Thus, unless suggestive procedures, not shown here, accompanied the prior identification, it has some probative value. The appropriate rule is to allow admission of such testimony with an opportunity for the defendant to show that the weight to be given to the testimony should be lessened because with the lapse of time from the date of the offense, the witness has likely become more conditioned to making an identification or the actual accuracy of his memory has become more impaired. That is what was permitted here.

Although defendant argues that the admissibility of out-of-court identifications made any time prior to trial could lead to unconstitutional *de facto* showups where defendants would not have the benefit of counsel or be protected against suggestiveness, there has been no indication of such abuse in the cause now before the court.

■ Defendant finally argues that the admission of evidence of Layten's prior identification was especially prejudicial to defendant because the State repeatedly emphasized Layten's credibility and honesty during its closing argument. During closing argument, the prosecutor stated, "[b]ut I think [Layten] is as simple and straightforward and honest as he appears to you. He had promised to tell the truth and so he came in and told the truth" and "[Layten] is simply too honest, too straightforward to be devious to have made up a set of lies, to try to somehow." Defendant contends that the prosecutor placed the integrity of his office behind Layten's credibility and cites *People v. Valdery* (1978), 65 Ill. App. 3d 375, 381 N.E.2d 1217, in support of this contention. However, in *Valdery*, the prosecutor repeatedly stressed that he was personally deeply impressed with the integrity and credibility of three witnesses. We believe that the comments

in the case now under consideration did not place the office of the State's Attorney behind the witness' credibility to an impermissible extent. The argument did not make the admission of the identification evidence erroneous.

As indicated, we affirm.

Affirmed.

McCULLOUGH and WEBBER, JJ., concur.