THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMAAR M. PRYOR, Defendant-Appellant.

Third District    No. 3—94—0290

Opinion filed July 18, 1996.

Arden J. Lang (argued), of State Appellate Defender's Office, of Springfield, for appellant.

Kevin W. Lyons, State's Attorney, of Peoria (John X. Breslin and Terry

A. Mertel (argued), both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE HOLDRIDGE delivered the opinion of the court:

Following a bench trial the defendant, Jamaar M. Pryor, was convicted of first degree murder (720 ILCS 5/9—1(b)(6) (West 1994)) and sentenced to a prison term of 52 years. The defendant maintains on appeal that: (1) he was denied his constitutional right to confront witnesses; (2) he was denied effective assistance of counsel; and (3) he was not proven guilty of the offense of first degree murder beyond a reasonable doubt. We affirm.

FACTS

The defendant was charged with the shooting death of Ivan Douglas, who was found in the early morning hours of January 1, 1993, lying beside the front stoop outside an apartment in the Warner Homes.

At a November 1, 1993, hearing on a defense motion to produce informants, defense counsel informed the court that police reports revealed two potential witnesses who wished to remain anonymous because of fear for their safety. Those individuals told the police that they had observed the shooting. The police reports indicated that the two witnesses were shown photographs and one witness identified someone other than the defendant as the shooter, and two other individuals, also not the defendant, as involved in the crime.

Defense counsel argued that the two witnesses were obviously favorable to the defense and requested that their names be disclosed or that they be produced. The prosecutor noted that she did not have the names and asked for a week to produce them or take other appropriate action. The court ordered the People to produce all photographs, notes and statements possessed by the police relating to the two confidential witnesses.

One week later an agreed order was entered providing that the names of the two confidential witnesses would not be released, but the witnesses would be produced at trial. It was also agreed that the two witnesses would meet with defense counsel prior to trial. In fact, it was noted in the record that on the day the agreed order was entered, defense counsel had already spoken to one of the two confidential witnesses.

On December 13, 1993, a scheduling conference was held wherein defense counsel informed the court that the parties had agreed that the two confidential witnesses would be allowed to testify in chambers

in order to protect their anonymity. The People agreed to produce the witnesses for trial. Defense counsel informed the court that he had spoken to one of the witnesses and he believed that the presence of both witnesses was crucial to his defense. The judge ordered that both witnesses be produced at 8:30 a.m. on the morning of trial, so that defense counsel would have time to talk to them before their testimony.

The bench trial began on February 9, 1994. The prosecutor informed the court that the two confidential witnesses were available. Defense counsel informed the court that, after discussing the matter with the defendant, he and the defendant had decided that the defendant would waive his right to be present during the testimony of the two witnesses. The judge noted for the record that this was an unusual procedure and asked the defendant if he was sure he wanted to waive his right to be present. The defendant reiterated his wish to do so.

Defense counsel informed the court that he believed that the witnesses' testimony was crucial to the defense, but the witnesses had repeatedly stated that they wanted to testify anonymously. Defense counsel told the court that he had assured the witnesses that he would agree to their demands because he did not wish to alienate witnesses who were potentially favorable to him. The trial judge asked the prosecutor if the witnesses were the People's witnesses and was told by the prosecutor that they were. The judge then asked the defendant again if he was voluntarily waiving his right to be present when these witnesses testified. Once again the defendant indicated that he understood his right and voluntarily waived it.

The judge, both attorneys, and the witnesses then retired to an adjoining jury room. Defense counsel again noted on the record his belief that the witnesses were crucial to his defense. The judge again asked whether they were the People's witnesses or defense witnesses. Defense counsel stated they were defense witnesses. The prosecutor stated they were the People's witnesses, although there would be some impeachment.

The first witness testified that he was in his residence at Warner Homes when he heard a commotion. He looked out and saw a young man walking on the sidewalk and two men walking approximately three steps behind the first man. He saw an individual, who was wearing a hood, fire approximately five shots at the first man. He testified that he saw the shooter and recognized him as a man he knew as "J.P." or "P.J." The prosecutor then showed the witness a picture of the defendant, and the witness identified the defendant as "J.P.," the individual who fired the shots.

The witness further testified that, after he saw the shooting, he went over to see who had been shot and recognized the victim. The shooter and his companion then passed the witness, and he looked right at their faces. He then saw the two men go into an apartment. The witness was shown three photographs, one of which, People's exhibit 23A, was a picture of Marion Beal, the individual the witness had previously identified as the shooter.

On cross-examination, the witness testified that he requested anonymity because the defendant, whom he knew only as "J.P.," was a gang member. The witness testified that he had never previously been shown a picture of the defendant before the one he identified at trial. He believed he had been shown exhibit 23A by investigators and had told police that that individual had shot the victim. He testified that he had seen Beal in Warner Homes on four to six occasions selling drugs, but he did not know his name. He explained that he had misidentified the individual in exhibit 23A as the shooter because the shooter was wearing a gray hooded jacket at the time of the shooting, but the defendant was no longer wearing the hooded jacket when he left the apartment. Rather, the man depicted in 23A (Beal) was now wearing the jacket. He confirmed that he had never told police about the individual called "J.P.," the hooded jacket or the jacket switch.

The other witness was the wife of the first confidential witness. She testified that she did not see the actual shooting, but she saw an individual pick up the gun that had apparently been thrown down by the shooter. She saw three individuals enter an apartment and leave a few seconds later. She did not remember being shown a picture of Beal by police. She also testified that the prosecutor had not shown her any photographs prior to her testimony.

In addition to the testimony of the confidential witnesses, Kevin Giles testified under a grant of transactional immunity. Giles previously had given a written statement to the police and testified before a grand jury. Giles' written statement and grand jury testimony were admitted as substantive evidence. Giles' prior grand jury testimony identified the defendant as the shooter. At trial, however, he recanted that testimony.

Carlos Williams testified that he saw Beal shoot the victim. He further testified that he did not talk to the police because the police did not contact him. In rebuttal, Officer Rabe testified that he and Officer Bridges interviewed Williams on January 3, 1993, and asked if he knew anything about the shooting. Williams told the officers that he did not know anything about the shooting. Officer Bridges corroborated Officer Rabe's testimony.

The trial court convicted the defendant and imposed a sentence of 52 years' imprisonment.

ANALYSIS

The defendant first argues that the trial court's admission of the two witnesses outside his presence violated his right to "face to face" confrontation guaranteed by the confrontation clause of the Illinois Constitution. Ill. Const. 1970, art. I, § 8. We disagree.

■ A defendant has a right to be present at all stages of the trial; however, that right may be waived by the defendant. *People v. Owens*, 102 Ill. 2d 145 (1984). In order for a waiver of the right to be present to be valid, the waiver must be voluntary, knowing, intelligent, and "done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748, 25 L. Ed. 2d 747, 756, 90 S. Ct. 1463, 1469 (1970), quoted in *People v. Johnson*, 75 Ill. 2d 180, 187 (1979); see also *People v. Martine*, 106 Ill. 2d 429 (1985).

■ Under the circumstances here, the defendant effectively waived his right to be present during the testimony of the two witnesses. The record indicates that twice before the witnesses testified, the trial court explained to the defendant his right to be present during the testimony, and on both occasions the defendant told the court that he understood that right and voluntarily waived it. Although the defendant expected the witnesses to identify Marion Beal as the individual who shot Ivan Douglas, that erroneous expectation does not negate the effectiveness of the defendant's waiver.

The defendant argues that his not knowing in advance how the witnesses would actually testify negated what would otherwise appear to be a knowing and voluntary waiver of his right to confrontation. We must reject the defendant's contention that his waiver was involuntary simply because the witnesses did not testify as he anticipated.

The defendant also maintains that his waiver was not knowing and intelligent because the prosecution withheld from him information that the witnesses had changed their stories. The People have a duty to disclose that a witness has repudiated portions of an investigator's report prior to trial, and failure to make that disclosure can constitute reversible error. *People v. Harris*, 123 Ill. 2d 113 (1988).

Had the People in fact withheld such information, the defendant's waiver of his right to confrontation would have been involuntary. However, the allegation that the prosecution knew that the witnesses intended to change their identification of the shooter from Marion Beal to the defendant is not supported by the record. Both

witnesses testified that they had never discussed their identification of the defendant as the shooter with any prosecutor. The defendant asks this court to assume from the fact that the prosecution presented the witnesses as the People's witnesses and the methodical direct examination that the prosecution must have known that the witnesses' stories had changed. However, we must decline the invitation to speculate on that basis.

The defendant next maintains that he was denied effective assistance of counsel when defense counsel failed to anticipate that the anonymous witnesses might identify the defendant as the person who shot Ivan Douglas.

■ In order to establish ineffective assistance of counsel, a defendant must prove that his counsel was deficient and that he was prejudiced by that deficiency. *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984); *People v. Albanese*, 104 Ill. 2d 504, 525 (1984). To show prejudice, there must be a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

There is no such evidence in this case. Defense counsel interviewed the witnesses prior to trial. It appears that the witnesses had been uncooperative from the start. Nothing in the record indicates that they would have discussed their testimony with defense counsel immediately prior to the trial. There is also nothing in the record to suggest that if the defendant had asserted his right to confront witnesses, their testimony would have been different. Because defendant showed neither that his attorney's actions were incompetent, nor that he was prejudiced by the alleged deficiencies, we conclude that defendant received effective assistance of counsel.

The defendant lastly maintains that he was not proven guilty of the offense of first degree murder beyond a reasonable doubt. In support of this contention, the defendant asserts that no physical evidence linked him to the crime and the eyewitness testimony of the anonymous witnesses was not consistent and conflicted with the testimony of other witnesses. We disagree.

■ On review, when confronted with a challenge to the sufficiency of the evidence, the relevant inquiry for a reviewing court is whether, after viewing the evidence in the light most favorable to the People, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d 237 (1985). A court of review applies this standard regardless of whether the evidence is direct or circumstantial. *People v. Pintos*, 133 Ill. 2d 286 (1989). The reviewing court is not permitted to substitute

its judgment for that of the trier of fact on questions involving the weight to be assigned evidence or the credibility of witnesses. *People v. Campbell*, 146 Ill. 2d 363 (1992). Accordingly, a judgment of conviction will not be disturbed unless the evidence presented at trial is so "unreasonable, improbable, or so unsatisfactory as to justify a reasonable doubt of the defendant's guilt [citation]." *Campbell*, 146 Ill. 2d at 375.

After a careful review of the evidence presented at trial and the record on appeal, we conclude that there is more than sufficient evidence from which the trial court, sitting as trier of fact, could have concluded that defendant committed the acts with which he was charged. The trial court chose to credit the testimony of the anonymous witnesses, one of whom identified the defendant as the person who shot Ivan Douglas. The trial court found that testimony reliable and chose to believe the People's interpretation of the incident. The evidence can in no way be said to be unreasonable, improbable or unsatisfactory, and, accordingly, we find no reasonable doubt of defendant's guilt.

For the foregoing reasons, the judgment of the circuit court of Peoria County is affirmed.

Affirmed.

McCUSKEY and MICHELA, JJ., concur.