THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHRISTOPHER HOWELL, Defendant-Appellant.

Third District    No. 3—02—0643

Opinion filed June 14, 2005.

514

Robert C. Lucenti, of Chicago, for appellant.

Kevin W. Lyons, State's Attorney, of Peoria (Lawrence M. Bauer and Robert M. Hansen, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HOLDRIDGE delivered the opinion of the court:

A jury found the defendant, Christopher Howell, guilty of (1) home invasion (720 ILCS 5/12—11(a)(2) (West 2000)) and (2) witness harassment (720 ILCS 5/32—4a(a)(2) (West 2000)). He was sentenced to concurrent prison terms of 15 and 30 years for these offenses, respectively, to be served consecutively with his sentence in another case.

During the pendency of this appeal, the United States Supreme Court issued its opinion in *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004), which concerns one of the issues in this case. Consequently, we ordered the parties to submit supplemental briefs concerning the effect of *Crawford* on this case.

On appeal, the defendant argues that the trial court erred by admitting (1) testimony that a witness recognized the defendant's voice without the State supplying a sufficient foundation; and (2) the hearsay grand jury testimony of a State witness in violation of his

sixth amendment right of confrontation under *Crawford*. The defendant also contends that the prosecutor's closing and rebuttal remarks were prejudicial (1) by vouching for the veracity of a witness; (2) by implying that the defendant had committed other crimes; (3) by defining the term "reasonable doubt"; and (4) cumulatively. Additionally, the defendant submits that the State failed to prove the elements of the crimes beyond a reasonable doubt. We affirm.

## BACKGROUND

In its indictment, the State alleged that the defendant committed home invasion and witness harassment in Peoria on September 12, 2001. The victim in both crimes was alleged to be the defendant's former wife, Delilah Russell. She was scheduled to testify in a previous case in which the defendant was charged with her battery by breaking her jaw. In the present case, the State charged the defendant with invading Russell's home and harassing her as a witness in the battery case.

At the trial for this case, the State called Russell as a witness, but she refused to testify. Outside the presence of the jury, the prosecutor presented an offer of proof concerning Russell's refusal to testify. Russell stated that she did not recall the events of September 12. The court then found that Russell was an unavailable witness.

The prosecutor resumed questioning Russell in the presence of the jury. Russell again refused to testify about the events of September 12. The court then allowed the State to offer redacted versions of Russell's hearsay testimony (1) before the grand jury in this case; and (2) in a hearing to revoke the defendant's bail in the battery case. In response to questions from the prosecutor about this prior testimony, Russell stated that she recalled testifying on those occasions, that she had testified under oath, and that she had testified truthfully. The court overruled the defendant's objection that Russell's grand jury testimony was inadmissible hearsay because it was not subject to cross-examination.

The prosecutor then read Russell's grand jury testimony to the jury. Russell had testified that she had an order of protection against the defendant at the time of the incident. Russell lived in a duplex apartment. At about 10 a.m. on the date in question, she went out her front door to take something to her car. As she returned, the defendant came from behind the apartment building and asked if he could talk with her. She ignored him and went back through the front door. She initially submitted that when she attempted to close the door, the defendant forced it open. Later, Russell said that the defendant did not force the door open but, rather, entered the apartment without

her permission. Russell stated, "he was at the door before I was even at the door." She told him that she did not want him in the apartment.

The defendant told Russell that the police had confiscated his car because it contained blood evidence concerning the battery case. Russell said that "he called me a police bitch and said that if I testify against him that my testimony will be nothing because I do have a felony on my record."

Russell repeatedly told the defendant to leave the apartment. The defendant then picked up Russell's phone. When Russell attempted to take the phone from him, the defendant punched her on the chin. An altercation ensued in which the phone landed on the floor. Russell picked up the phone to call the police. The defendant grabbed her arm and bit her hand, causing her to drop the phone. The defendant then took the phone, which Russell described as a "flip phone," and "snapped it in half."

The defendant paced the floor "as if he wasn't going to let [Russell] leave." Russell said that she would have left the apartment, but felt that she could not leave her son alone with the defendant. Russell heard her neighbor, Amy Hennigh, make a "thumping noise" on the wall as a prearranged signal "to let [Russell] know that she's there and she hears it." Then the defendant left the apartment.

Next, the State introduced Russell's testimony from the hearing to revoke the defendant's bail in the battery case. This testimony was substantially similar to her grand jury testimony, but with the following differences:

(1) concerning how the defendant got into the residence, Russell said, "I entered into the apartment and he came in right behind me, because he was already at the door"; (2) regarding the defendant striking her, she stated, "when I reached for the phone to snatch it out of his hand, he punched me in my chin and said that I had attempted to hit him"; (3) Russell testified that, "[h]e told me I was a police bitch and that my credibility wasn't anything and that he could beat the case with a lawyer, [and] he could beat the case of breaking my jaw"; and (4) during her bail hearing testimony, Russell did not mention that the defendant broke her phone or that he prevented her from leaving the apartment.

Next, Hennigh testified that she was Russell's neighbor at the time of the incident. She said that she had seen the defendant on various occasions before the incident in question. At the time of the incident, Hennigh heard "yelling and screaming" coming from Russell's apartment. Then, "it sounded like things were being pushed. It started to sound physical." Hennigh recognized the defendant's voice,

but could not specifically hear what he was saying. The defendant did not object to Hennigh's statement that she recognized the defendant's voice. Hennigh said that she pounded on the wall in an attempt to intervene in the argument, as she and Russell had previously arranged.

Hennigh stated that after a few minutes, she saw Russell, the defendant, and some other people in the apartment's yard. However, she had not seen Russell and the defendant go from the apartment to the yard. Hennigh then saw everyone leave the yard.

Peoria police officer Jeffrey Kice testified that he interviewed Russell shortly after the incident. He said that she "was very shook up, [and] acted scared." Russell told Kice that the defendant "showed up in her back yard, she didn't want to deal with him, she went inside the house, and he followed her inside the house." Russell told the defendant to get out and then he hit her.

Frank Walter stated that he was an investigator for the Peoria County State's Attorney's office. He photographed Russell's "bruised area to the left jaw chin area" after the incident. He also photographed "an injury to the middle finger of [Russell's] hand, the knuckle area." Walter said that while photographing Russell, "[h]er visible emotional state was very excited, very nervous, crying, [and] shaking." After Walter's testimony, the court took judicial notice of the previous battery case.

During her closing remarks, the prosecutor made the following statements:

> "He called [Russell] a police bitch and he starts to tell her that her credibility isn't anything, that his lawyer is going to beat that charge, he's going to destroy her credibility. And why do you think he's telling her this, ladies and gentlemen, because the reason he went over there was to try to get her, the prime witness in that case, back on his side, trying to intimidate her and harass her as he had done before.
>
> And she stated to you [that] *** she's intimidated by him. She's scared of him and Lord knows she should be. He not only whacked her on that date but she stated that he had broken her jaw before.
> ***
> *** They're struggling over a phone. She's trying to call the police and he bites her hand. That's the kind of guy she's dealing with.
> ***
> And, ladies and gentlemen, we're lucky that she was strong enough to come in and testify on those two previous dates against this man after what he had done to her and what she had to go through with him here. ***
> &ast; &ast; &ast;

How do you think he felt being in that car getting pulled over, the car gets seized, now he's got to walk wherever he wants to go ***.

***

So, what is home invasion and what do I have to prove? *** *** [T]he defendant knowingly and without authority entered the dwelling place. ***

*** [U]nder Illinois law *** you could find that his entry into her residence was without authority if at the time of entry into the dwelling the defendant has an intent to commit a criminal act within the dwelling, regardless of whether the defendant was initially invited into or received consent to enter the dwelling.

Intent to commit a criminal act. Well, we have several to choose from, ladies and gentlemen. That's the luxury of Illinois law for you. Not only did he intend to go over there and commit harassment of a witness, discuss with her this pending proceeding and her testimony in it, to try to cause her emotional distress, but also he intended to violate that order of protection. With absolutely no qualms, he was going to enter into that residence and have contact with her of a harassing nature which is prohibited by that order of protection ***.

***

*** [W]hen the defendant entered the dwelling place he knew or had reason to know that one or more persons were present. That's not disputed in the case, ladies and gentlemen. ***

Count 2, harassment of a witness. His whole reason for going over there that day, ladies and gentlemen, first, that the defendant communicated directly or indirectly with Delilah Russell. Certainly he communicated directly with her. ***

There was certainly some direct communication, some of it was done by his fist.

* * *

*** I have to prove all of those propositions beyond a reasonable doubt; but I ask you to recall what exactly the definition of all of those words are, 'beyond a reasonable doubt.' Not beyond all doubt. It doesn't say 'beyond a shadow of a doubt.' It says beyond a reasonable doubt and that's why you're here because you are reasonable people. You have the ability to weigh the evidence and determine what you think is reasonable and what you don't believe ***.

***

Unfortunately for the defendant, while he might have succeeded today, he certainly did not succeed on those two prior occasions when Delilah had the guts to get up there and testify. She even had the guts to get up here today and tell you, yeah, I testified at those prior proceedings and, yeah, I was under oath and, yes, I told the truth, I just don't want to testify today.

And so now you know all the things she's been through and can understand why she didn't want to testify today.

*** I ask you to take control today and to show him that his efforts will not be successful, that he will not and is not the one in control, that when he commits a crime he will be held accountable just like anybody else."

The prosecutor stated the following during her rebuttal remarks:

"I would ask you to recall her statements as she was up on the stand today, as I recall she was asked whether she recalled testifying at these other proceedings and she said, yes, she did. Did she recall being under oath to tell the truth? Yes, she did. Did she testify truthfully? Yes, she did. That's my recollection and I would ask you to recall or check your notes or discuss it amongst yourselves.

***

We can't even begin to imagine what she's gone through and what her life is like to have ever lived with that defendant being able to find her whenever he wanted to."

The defendant did not object during the prosecutor's closing or rebuttal arguments. At the conclusion of the trial, the jury found the defendant guilty.

The defendant filed a motion for a new trial. In this motion, the defendant did not raise specific issues concerning (1) evidentiary rulings; or (2) the prosecutor's closing and rebuttal remarks. The defendant's motion stated "[t]hat the defendant was denied due process and equal protection of the laws as guaranteed under the Constitution of the United States and the State of Illinois." The trial court denied the motion.

The court sentenced the defendant as indicated above. The defendant appeals.

## ANALYSIS

### I. Evidentiary Rulings

### A. Foundation

The defendant contends that the State failed to establish a foundation for Hennigh's testimony that she recognized the defendant's voice.

■ Generally, a defendant must object to an error at trial and include the objection in a posttrial motion or the objection is waived on appeal. *People v. Nicholas*, 351 Ill. App. 3d 433, 813 N.E.2d 1057 (2004). However, "[p]lain errors or defects affecting substantial rights may be noticed [by an appellate court] although they were not brought

to the attention of the trial court." 134 Ill. 2d R. 615(a). We will find plain error only where (1) the evidence was closely balanced, or (2) the error so prejudiced the defendant's case that it resulted in an unfair trial. *People v. Johnson*, 208 Ill. 2d 53, 803 N.E.2d 405 (2003).

■ A proper foundation is laid that a witness can identify a defendant's voice if the witness states how she is acquainted with the defendant's voice. *People v. Harris*, 17 Ill. 2d 446, 161 N.E.2d 809 (1959).

■ In the case at bar, the defendant did not object at trial to Hennigh's testimony that she recognized the defendant's voice. The defendant also did not raise this issue in his posttrial motion. Therefore, the issue is waived and we review it for plain error.

The record shows that prior to testifying that she recognized the defendant's voice, Hennigh only stated that she had seen the defendant on various occasions. However, one cannot infer from this statement that Hennigh was familiar with the defendant's voice. Thus, it was error for Hennigh to testify that she recognized the defendant's voice.

Our discussion below concerning the sufficiency of the evidence shows that the evidence was not closely balanced. Even though it was error for Hennigh to testify that she recognized the defendant's voice, this error did not so prejudice the defendant's case that it caused an unfair trial. We rule, therefore, that it was not plain error for the trial court to allow Hennigh to testify that she recognized the defendant's voice without a sufficient foundation for this testimony.

### B. Hearsay Grand Jury Testimony

The defendant submits that the trial court erred by admitting Russell's grand jury testimony because, under *Crawford*, it violated his sixth amendment right of confrontation.

■ "In all criminal prosecutions, the accused shall enjoy the right *** to be confronted with the witnesses against him ***." U.S. Const., amend. VI. In *Crawford*, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354, the United States Supreme Court ruled that hearsay grand jury testimony is inadmissible because it is not subject to cross-examination.

The defendant contends that the standard of review for this issue is harmless error. He argues that he preserved the issue in his motion for new trial by stating that he was denied due process and equal protection. The State submits that the appropriate standard of review is plain error.

■■ The Illinois Supreme Court has pointed out that in harmless error analysis, where the defendant has preserved the issue for review, the burden of persuasion is on the State. In plain error analysis, where

the defendant has not preserved the issue, the burden of persuasion is on the defendant. *People v. Thurow*, 203 Ill. 2d 352, 786 N.E.2d 1019 (2003). Raising a general rather than a specific error in a posttrial motion results in waiver of that issue on appeal. *People v. Henry*, 318 Ill. App. 3d 83, 742 N.E.2d 893 (2001).

■ In the present defendant's motion for new trial, he only raised the general issues of due process and equal protection violations. He did not specifically mention a violation of his right of confrontation. Because he raised two general objections rather than a specific objection, this issue was not properly preserved. See *Henry*, 318 Ill. App. 3d 83, 742 N.E.2d 893. Thus, we rule that the standard of review is plain error, for which the defendant has the burden of persuasion. See *Thurow*, 203 Ill. 2d 352, 786 N.E.2d 1019.

In the present case, the trial court erred by admitting Russell's grand jury testimony under *Crawford*. However, as we discuss below, the evidence in this case was not closely balanced.

Furthermore, admission of this testimony did not prejudice the defendant's case. The defendant contends that his case was prejudiced because of the differences between Russell's grand jury testimony and her bail hearing testimony. However, Russell's admissible bail hearing testimony was substantially similar to the grand jury testimony. The differences between the two versions of Russell's testimony did not create an unfair trial. Therefore, we hold that the trial court's admission of Russell's grand jury testimony was not plain error.

## II. Prosecutor's Closing and Rebuttal Remarks

The defendant did not object during the prosecutor's closing and rebuttal remarks. He also did not raise issues concerning these remarks during his posttrial motion. Thus, these issues are waived. See *Nicholas*, 351 Ill. App. 3d 433, 813 N.E.2d 1057. Consequently, we review these issues for plain error. See *Johnson*, 208 Ill. 2d 53, 803 N.E.2d 405.

### A. Vouching for the Veracity of a Witness

The defendant claims that in her closing and rebuttal remarks the prosecutor improperly vouched for Russell's veracity. Specifically, he argues that it was error for the prosecutor (1) to tell the jurors they were "lucky" that Russell came in to testify; (2) to commend Russell for having the "guts" to testify; and (3) to state that Russell was telling the truth.

The defendant relies upon *People v. Valdery*, 65 Ill. App. 3d 375, 381 N.E.2d 1217 (1978), in which the prosecutor vouched for the integrity and character of witnesses in his remarks to the jury. He also told the jury that the witnesses exhibited a high level of responsibility by coming forward to testify.

The *Valdery* court held that these remarks prejudiced the defendant's case because the State's Attorney's office was placing its integrity behind the credibility of the witnesses. The appellate court reversed the defendant's convictions and remanded for a new trial on the basis of these and other improper comments from the prosecutor.

Nonetheless, a prosecutor's comments must be taken in their entirety and placed in context. *People v. Logan*, 352 Ill. App. 3d 73, 815 N.E.2d 830 (2004). The court in *People v. Medrano*, 271 Ill. App. 3d 97, 648 N.E.2d 218 (1995), held that it was proper for a prosecutor to state that witnesses had the courage to come forward and to testify truthfully under oath. In *People v. Pope*, 284 Ill. App. 3d 695, 672 N.E.2d 1321 (1996), the court found no error where the prosecutor said that witnesses were "heroes" for testifying.

■ In the present case, the prosecutor's comments must be taken in their entirety and placed in context. The prosecutor said that Russell had "guts" to testify on previous occasions and at trial. This comment was analogous to the prosecutors' comments in *Medrano* and *Pope*.

The prosecutor stated that "we're lucky" Russell was "strong enough" to testify on two previous occasions. Taken in context, the "we" to which the prosecutor was referring was not specifically "the State." Thus, the prosecutor was not placing the integrity of the State's Attorney's office behind the credibility of Russell as a witness. See *Valdery*, 65 Ill. App. 3d 375, 381 N.E.2d 1217.

Finally, taken in context, the prosecutor did not state that Russell testified truthfully. The prosecutor was not vouching for Russell's veracity as a witness but, rather, was recalling specific portions of Russell's testimony for the jury.

We rule that the prosecutor did not vouch for Russell's veracity as a witness during her closing and rebuttal comments. Therefore, there was no error, much less plain error, in the above comments during the prosecutor's closing and rebuttal remarks.

## B. Implying the Defendant Committed Other Crimes

■ The defendant submits that the following three comments by the prosecutor improperly implied that the defendant had committed other crimes: (1) "trying to intimidate her and harass her as he had done before"; (2) "that when he commits a crime he will be held accountable like anybody else"; and (3) "[w]e can't even begin to imagine what she's gone through and what her life is like to have ever lived with that defendant being able to find her whenever he wanted to."

The defendant relies upon *Valdery*, 65 Ill. App. 3d 375, 381 N.E.2d 1217, for the proposition that a prosecutor cannot imply that a

defendant committed other crimes when that fact is not supported by the record or is not relevant to the present case.

However, a prosecutor has great latitude in closing and rebuttal arguments. *People v. Kliner*, 185 Ill. 2d 81, 705 N.E.2d 850 (1998). The prosecutor may draw legitimate inferences from the evidence. *People v. Simms*, 192 Ill. 2d 348, 736 N.E.2d 1092 (2000).

Evidence that a defendant committed other crimes is admissible to prove any material issue other than whether the defendant has a propensity to commit crimes. It is not reversible error to erroneously admit evidence of other crimes if its admission did not deny the defendant a fair trial. *Kliner*, 185 Ill. 2d 81, 705 N.E.2d 850.

The first comment cited by the defendant in this case concerned the prosecutor's statement that the defendant had intimidated and harassed Russell on a previous occasion. This comment referred to the events involving the battery case, which was the underlying case for which Russell was scheduled to be a witness. The defendant was charged with harassing Russell as a witness in the battery case. Thus, the prosecutor's comments about the underlying battery case were supported by the record and relevant to the present witness harassment case. See *Valdery*, 65 Ill. App. 3d 375, 381 N.E.2d 1217. Even if it was improper for the prosecutor to comment that the battery case involved intimidation and harassment, these comments did not deny the defendant a fair trial. See *Kliner*, 185 Ill. 2d 81, 705 N.E.2d 850.

The second comment concerned holding the defendant accountable for his actions. This comment must be taken in context. See *Logan*, 352 Ill. App. 3d 73, 815 N.E.2d 830. The prosecutor did not ask the jury to hold the defendant responsible for the commission of other crimes. She asked the jury to hold the defendant responsible for committing the crimes charged in the present case.

The third comment concerned Russell's life with the defendant. This comment did not imply that the defendant had committed other crimes. This comment was a reasonable inference from Hennigh's testimony that she had seen the defendant at Russell's home on many previous occasions and, therefore, he could "find [Russell] whenever he wanted to." See *Kliner*, 185 Ill. 2d 81, 705 N.E.2d 850. This fact was relevant to both of the crimes charged in this case. See *Valdery*, 65 Ill. App. 3d 375, 381 N.E.2d 1217.

In summary, therefore, we rule that the prosecutor's comments either did not imply that the defendant committed other crimes or were not plain error.

## C. Defining "Reasonable Doubt"

The defendant argues that the prosecutor improperly defined

the State's "reasonable doubt" burden of proof for the jury. The defendant relies upon *People v. Smothers*, 55 Ill. 2d 172, 302 N.E.2d 324 (1973), *People v. Johnson*, 102 Ill. App. 3d 122, 429 N.E.2d 905 (1981), and *People v. Speight*, 153 Ill. 2d 365, 606 N.E.2d 1174 (1992), for this proposition. However, these cases are not helpful to the defendant.

In both *Smothers* and *Johnson*, the courts' rulings did not concern a prosecutor's attempt to define "reasonable doubt." Thus, the holdings of these cases are inapposite to the present case.

While the holding of *Speight* is on point, it does not help the defendant. The *Speight* court stated that neither the court nor the parties should attempt to define the reasonable doubt standard for the jury. However, such an attempt is reversible error only if it causes a defendant substantial prejudice. Examples of comments that cause substantial prejudice include the prosecutor (1) suggesting that the State has no burden of proof or attempting to shift that burden to the defendant; (2) reducing the State's burden of proof to a *pro forma* or minor detail; or (3) giving an involved instruction on reasonable doubt to the jury. *Speight*, 153 Ill. 2d 365, 606 N.E.2d 1174.

In the present case, the prosecutor gave the jury a brief definition of the term "reasonable doubt." Under *Speight*, these comments were improper. However, the prosecutor's statements did not rise to the level of reversible or plain error.

In this case, the prosecutor's comments did not (1) suggest that the State had no burden of proof or attempt to shift that burden to the defendant; (2) reduce the State's burden of proof to a *pro forma* or minor detail; or (3) amount to involved instructions on reasonable doubt. Under *Speight*, the prosecutor's comments in this case were not substantially prejudicial to the defendant. Therefore, we rule that the prosecutor's attempt to define "reasonable doubt" was improper, but was not plain error.

### D. Cumulative Error

■ The defendant submits that several of the prosecutor's closing and rebuttal comments amounted to cumulative error. In addition to reiterating or raising new arguments about some comments previously discussed, the defendant takes issue with a number of other comments made by the prosecutor.

The defendant contends that the following statements mischaracterized the evidence: (1) "[a]nd why do you think he's telling her this, ladies and gentlemen, because the reason he went over there was to try to get her, the prime witness in that case back on his side, trying to intimidate her and harass her as he had done before"; (2) "she's

intimidated by him. She's scared of him and Lord knows she should be. He not only whacked her on that date but she stated that he had broken her jaw before"; (3) "[t]hat's the kind of guy she's dealing with"; and (4) "when the defendant entered the dwelling place he knew or had reason to know that one or more persons were present. That's not disputed in the case, ladies and gentlemen."

The defendant submits that the following statement was a discussion of his state of mind that was unsupported by the evidence and was an attempt to lessen the State's burden of proof:

"Intent to commit a criminal act. Well, we have several to choose from, ladies and gentlemen. That's the luxury of Illinois law for you. Not only did he intend to go over there and commit harassment of a witness, discuss with her this pending proceeding and her testimony in it, to try to cause her emotional distress, but also he intended to violate that order of protection. With absolutely no qualms, he was going to enter into that residence and have contact with her of a harassing nature which is prohibited by that order of protection ***."

The defendant argues that the following statement invited the jury to speculate concerning facts not in evidence: "[w]e can't even begin to imagine what she's gone through and what her life is like to have ever lived with that defendant being able to find her whenever he wanted to." He claims that the following remark was irrelevant, derogatory, and an attempt to assassinate the defendant's character: "how do you think [the defendant] felt being in that car getting pulled over, the car gets seized, now he's got to walk wherever he wants to go." The defendant submits that the following comment was offered to incite the jury: "[t]here was certainly some direct communication, some of it was done by his fist."

The defendant contends that the prosecutor improperly attempted to create an empathetic bond between the jury and Russell with the following remark:

"Unfortunately for the defendant, while he might have succeeded today, he certainly did not succeed on those two prior occasions when Delilah had the guts to get up there and testify. She even had the guts to get up here today and tell you, yeah, I testified at those prior proceedings and, yeah, I was under oath and, yes, I told the truth, I just don't want to testify today.

And so now you know all the things she's been through and can understand why she didn't want to testify today."

The defendant reiterates his argument concerning the prosecutor's attempt to vouch for Russell's credibility. And, finally, the defendant submits that the prosecutor improperly asked the jury to send a message to the defendant and the community with the following com-

ment: "I ask you to take control today and to show him that his efforts will not be successful, that he will not and is not the one in control, that when he commits a crime he will be held accountable just like anybody else."

An appellate court's resolution of the argument that the cumulative effect of various trial errors warrants reversal depends upon the court's evaluation of the individual errors. If the alleged errors do not amount to reversible error on any individual issue, generally there is no cumulative error. *People v. Doyle*, 328 Ill. App. 3d 1, 765 N.E.2d 85 (2002). However, where errors are not individually considered sufficiently egregious for an appellate court to grant the defendant a new trial, but the errors, nevertheless, create a pervasive pattern of unfair prejudice to the defendant's case, a new trial may be granted on the ground of cumulative error. *People v. Blue*, 189 Ill. 2d 99, 724 N.E.2d 920 (2000).

In this case, most of the prosecutor's contested statements were not error. The statements that were improper did not create a pervasive pattern of unfair prejudice to the defendant's case.

The prosecutor was drawing a reasonable inference concerning an element of witness harassment by stating that the defendant went to Russell's home to intimidate her and harass her, and that Russell was scared of the defendant. As we stated above, it was not reversible error for the prosecutor to say that the battery case involved intimidation and harassment. Furthermore, the statement that Russell said the defendant broke her jaw was a reasonable inference from Russell's reference to "the case of breaking my jaw."

The prosecutor's statement concerning "the kind of guy [Russell was] dealing with" was a fair inference from the evidence. This statement referred to "the kind of guy" who bit Russell's hand during the struggle for the phone.

The prosecutor did not misstate the evidence by saying that the defendant knew someone was in the dwelling. It was rational to infer from Russell's testimony that the defendant knew Russell was in the dwelling. Additionally, the defendant argues that it was error for the prosecutor to say that this fact was undisputed when the defendant did not offer any evidence. Even though the prosecutor should have said that this fact was proved beyond a reasonable doubt, this error was not so prejudicial that it caused an unfair trial.

The prosecutor's statement concerning "intent to commit a criminal act" must be taken in context. This comment was a rational inference about one of the elements of home invasion. The element concerns entering the dwelling of another "without authority." See 720 ILCS 5/12—11(a)(2) (West 2000). Case law states that one who

enters with intent to commit a criminal act enters without authority. See *People v. Bush*, 157 Ill. 2d 248, 623 N.E.2d 1361 (1993). Therefore, this statement was not error.

We have already stated that the prosecutor's remark concerning imagining what Russell had gone through and what her life was like was proper insofar as it did not suggest that the defendant committed other crimes. However, the comment was improper to the extent that it caused the jury to speculate about other facts not in evidence and to empathize with the victim. Nonetheless, this comment was not so prejudicial that it created an unfair trial.

The prosecutor's comment about how the defendant felt after the seizure of his car was a fair inference from the evidence. This comment concerned the defendant's motive for committing the crimes charged in this case.

The prosecutor's statement that the defendant communicated by his fist was improper. However, this comment did not create an unfair trial.

We ruled above that the prosecutor's remark concerning Russell having "guts" was not improper. Her comments about Russell not wanting to testify were improper, but did not deny the defendant a fair trial.

We also held above that the prosecutor did not vouch for Russell's veracity as a witness. Thus, we need not address this part of the defendant's cumulative error argument.

Finally, the prosecutor neither stated nor implied that the jury should send a message to the defendant and the community. As we discussed above, the prosecutor merely asked the jury to hold the defendant accountable for his actions in the crimes charged in this case.

In summary, most of the prosecutor's closing and rebuttal statements cited by the defendant were not error. A few of the comments were improper, but these comments neither individually nor cumulatively created an unfair trial for the defendant. Therefore, we hold that there was no cumulative error.

### III. Sufficiency of the Evidence

The defendant contends that the State failed to prove the elements of home invasion and witness harassment beyond a reasonable doubt. Specifically, he submits that the State offered no direct evidence of the crimes.

"(a) A person *** commits home invasion when without authority he *** knowingly enters the dwelling place of another when he *** knows *** that one or more persons is present *** and

***

(2) Intentionally causes any injury *** to any person *** within such dwelling place[.]" 720 ILCS 5/12—11(a)(2) (West 2000).

A person commits witness harassment if he, "with intent to harass or annoy one who *** (2) *** may be expected to serve as a witness in a pending legal proceeding, because of the *** potential testimony of the witness, communicates directly *** with the *** witness *** in such manner as to produce mental anguish or emotional distress or who conveys a threat of injury *** to the *** witness." 720 ILCS 5/32—4a(a)(2) (West 2000).

When analyzing the sufficiency of the evidence, we review the evidence in the light most favorable to the prosecution and consider whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Barham*, 337 Ill. App. 3d 1121, 788 N.E.2d 297 (2003). The trier of fact is allowed to make all reasonable inferences from the evidence. *People v. Nitz*, 143 Ill. 2d 82, 572 N.E.2d 895 (1991). Guilt also may be shown by circumstantial evidence. *People v. Adams*, 109 Ill. 2d 102, 485 N.E.2d 339 (1985). The reviewing court applies the same standard whether the evidence is direct or circumstantial. *People v. Pryor*, 282 Ill. App. 3d 92, 668 N.E.2d 1090 (1996).

Concerning the home invasion charge, a reasonable jury could have found beyond a reasonable doubt that the defendant did not have authority to enter Russell's home. In fact, he was under a court order of protection to have no contact with Russell. The defendant knowingly entered Russell's home, knowing that she was present in the home. Russell's testimony showed that the defendant intentionally injured her. A jury also reasonably could have inferred from the evidence that Russell's injuries were intentionally caused by the defendant.

Regarding the witness harassment charge, a rational jury could have found that the evidence showed beyond a reasonable doubt that the defendant went to Russell's home with the intent to harass or annoy her. Russell was expected to serve as a witness in the defendant's pending battery case. The defendant communicated directly with Russell because of her pending testimony in that case. The testimony of Kice and Walter showed that the defendant's communication with Russell caused her mental anguish and emotional distress. A jury also reasonably could have inferred from Hennigh's testimony that the argument between the defendant and Russell caused Russell anguish and distress. Furthermore, a rational jury could have deduced that the defendant not only conveyed a threat of injury to Russell but, moreover, he injured her in fact.

Taking the evidence in the light most favorable to the prosecution, we conclude that the State did not fail to prove the elements of home invasion and witness harassment beyond a reasonable doubt.

## CONCLUSION

For the foregoing reasons, we affirm the Peoria County circuit court's judgment convicting the defendant of home invasion and witness harassment.

Affirmed.

SCHMIDT and BARRY, JJ., concur.