NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 230105-U

NO. 4-23-0105

IN THE APPELLATE COURT

FILED
February 15, 2024
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Pike County |
| JORDAN R. RAHAMAN, | ) | No. 21CF219 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Debra L. Wellborn, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court.
Justices Harris and DeArmond concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The propriety of the trial court's denial of defendant's pretrial motion is forfeited and not subject to the plain error doctrine, and defendant received effective assistance of trial counsel.

¶ 2   Defendant Jordan R. Rahaman was convicted of aggravated battery and sentenced to 20 years in prison for armed robbery (720 ILCS 5/18-2(a)(1) (West 2020) and 5 years in prison for intimidation (*id.* § 12-6(a)(5)), possession of a stolen vehicle (625 ILCS 5/4-103(a)(1) (West 2020), and aggravated battery (720 ILCS 5/12-3.05 (a)(1) (West 2020)), each to be served concurrently. On appeal he argues that (1) the trial court erred in denying his pretrial motion to bar evidence that he choked his girlfriend (the victim's daughter) the day before the incident at trial; (2) trial counsel provided ineffective assistance by failing to preserve the arguments in a motion for new trial, failing to object to various errors in the admission of evidence and with jury

instructions, and failing to argue every mitigating factor at sentencing; and (3) cumulative error. We affirm.

¶ 3                                I. BACKGROUND

¶ 4        In September 2021, the State charged defendant with multiple counts arising out of an altercation with Timothy Gallagher on September 8, 2021. Specifically, defendant was charged by information with aggravated robbery (count I) (720 ILCS 5/18-1(b)(1) (West 2020)), unlawful possession of a stolen vehicle (count II) (625 ILCS 5/4-103(a)(1) (West 2020)), aggravated battery with intent to cause great bodily harm (count III) (720 ILCS 5/12-3.05(a)(1) (West 2020)), aggravated battery (strangulation) (count IV) (*id.* § 12-3.05(a)(5)), intimidation (count V) (*id.* § 12-6(a)(5)), and aggravated assault with a knife (count VI) (*id.* § 12-2(c)(1)). An amended information was subsequently filed in March 2022, adding charges of armed robbery while carrying a dangerous weapon (count VII) (*id.* § 18-2(a)(1)) and armed violence with a knife (count VIII) (*id.* §§ 33A-2(a), 33A-3(a-5)).

¶ 5                                A. Pretrial Motion

¶ 6        Prior to trial, defendant filed a motion *in limine* to bar testimony of an encounter he had with Hannah English Gallagher, who was both his girlfriend and the daughter of the victim, Timothy Gallagher, the day before the September 8 incident giving rise to the instant charges. It was alleged that defendant became violent towards Hannah and attempted to choke her. According to the State, the statement:

>    "shows that he was becoming violent, sort of erratically violent, which is exactly
>
>    what Mr. Gallagher, the victim, is going to say as far as how it began. So, extremely
>
>    close in time. It appears that she's saying that it was the day before the incident. It
>
>    involves the exact same people, three people in this little apartment. The defendant

[became] violent toward one of them, and, then shortly thereafter, the defendant [became] violent toward the other of them. I think it's admissible not to show that he's a bad person but to show what actually happened in this particular sequence of events that led up to the charges in this case."

¶ 7    Defense counsel argued, "the fact that there had been a disagreement for whatever reason over whatever between Hannah Gallagher and [defendant], I think would be somewhat prejudicial to [defendant] in relation to these specific charges against [him]." Defendant's counsel asserted that although Timothy was free to testify as to what behavior defendant engaged in on the day of the incident, he maintained that "anything involving Hannah or any other person prior to this date would be prejudicial to my client."

¶ 8    The State responded that one of the charges against defendant alleged aggravated battery by strangulation, which "is something that Mr. Gallagher has always said happened as part of the attack by the defendant." The State continued, "So [defendant] suddenly becoming angry and choking someone the day before, involving the exact same parties and very close in time, I think that would be relevant to him suddenly becoming angry and doing the same thing to Mr. Gallagher the next day, relevant to the charge itself."

¶ 9    The trial court denied defendant's motion to exclude the testimony, finding that the statement was not made "in a timeframe so distant from what was actually occurring over that period of three days that it does not have relevance in regard to that; in addition to that, an allegation of that same type of physical action or reaction by the defendant."

¶ 10    B. Trial

¶ 11    Counts I (aggravated robbery) and VI (aggravated assault with a knife) were dismissed and the case proceeded to jury trial on July 11, 2022, on counts II, III, IV, V, VII, and

VIII. The primary witnesses included Timothy, Hannah, Timothy's neighbor Diane Little, and Pittsfield Deputy Chief Jennifer Thompson.

¶ 12                                    1. *Prior Relationships*

¶ 13        Defendant and his girlfriend Hannah had both been involved with drugs; Hannah described herself as a drug addict, with methamphetamine and fentanyl being her drugs of choice. She testified that she had used drugs with defendant and that he had told her demons spoke to him and told him to do things. Timothy testified that he did not like defendant and related that the two had been involved in an altercation in June at Timothy's mother's funeral. Defendant had accompanied Hannah to the funeral and was asked to leave. When he refused, an argument ensued during which Timothy struck defendant on the head with a cane.

¶ 14                                    2. *September 4—Pick Up in St. Louis*

¶ 15        On September 4, 2021, Timothy received a phone call from his daughter Hannah between 1 and 1:30 a.m. asking him to pick her up in St. Louis, Missouri. Hannah told her father that she had no money and that she and defendant had been robbed and beaten up. She also said she wanted to "get clean." Timothy immediately traveled to St. Louis and brought Hannah and defendant back to his apartment in Pittsfield, Illinois. He had not planned on bringing defendant back with him, but his daughter refused to leave without him.

¶ 16        Once back at Timothy's apartment, defendant and Hannah rested for a few days, and Hannah became sick from withdrawal. The plan was for Hannah to detoxify at her father's apartment and to seek professional help. Timothy said he had made several phone calls to arrange help for Hannah. Defendant was supposed to stay at Timonthy's apartment just to rest and then go stay with a family member in Indiana. According to Timothy, defendant "wasn't supposed to stay." He added, "I certainly agreed to let, you know, let them get some sleep. I needed it myself. But I

was under the impression that he was going to continue on to wherever he was going, where he had family." Timothy said he wanted defendant to leave but that when defendant said he was leaving, Hannah became upset and did not want him to go.

¶ 17                                    3. *September 7—Choking Incident*

¶ 18          According to Hannah, defendant attempted to choke her during an argument the day before the September 8 altercation. She testified, "he put his hands around my throat and choked me," and she "couldn't breathe." She did not recall what the fight was about.

¶ 19                                    4. *September 8—The Altercation*

¶ 20          On September 8, 2021, Timothy had come back from visiting his neighbor Diane (three apartments away) with the intention of going to McDonald's to buy her a sandwich for lunch. Before leaving, he checked with his daughter, who asked him to get her a McFlurry. As he was leaving his apartment, he had a disagreement with defendant. According to Timothy, defendant had asked to stay for three days, and Timothy responded, "that wasn't going to happen," and he said that defendant "needed to go." At that point, according to Timothy, defendant attacked him, and the two got into a fight. Timothy said defendant struck him several times, kicked him in the head and ribs, choked him, and knocked him onto a table and onto the ground. He also said that defendant threatened him with a knife, holding it to his throat. According to Timothy, defendant also poured lighter fluid on him and threatened to set him on fire with a lighter and a candle that had been burning on the kitchen table.

¶ 21          At the time of the confrontation, Hannah was in the back bedroom, but she came out once the altercation started. She testified that he saw her father standing by the door and then he fell to the ground. Defendant was "[k]ind of standing over him, over him but behind him at the same time." She said her father looked "sad" and that "his nose was bleeding, his eyes were

watering, and his hands were shaking." She also said his neck was red. She did not see the actual fight but said her father did not have any marks on his face earlier in the day. Hannah acknowledged that she had smoked methamphetamine with defendant before the incident, which affected her memory.

¶ 22   Timothy said that defendant went through his closets and began taking items and telling Hannah to put them into either a bag or suitcase and take them to Timothy's car. Hannah did not recall what defendant told her to do but acknowledged that he was telling her to do something and that she complied. She did, however, recall that defendant told her to go to Diane's apartment to get her father's wallet; she went to Diane's, but the wallet was not there. She also said she did not recall seeing a knife or seeing or smelling lighter fluid.

¶ 23   According to Timothy, the total incident lasted about an hour and a half, ending when defendant and Hannah eventually left and took Timothy's car. Timothy then went to Diane's apartment and asked her to call the police, which she did. According to Diane, Timothy came to her door "all panicky." She said, "He had marks all over his face. Clearly, you could tell he'd been beat up and he told me to call 911, he'd been robbed, and they took his vehicle." She also said that Timothy was "pretty upset." She did not smell any lighter fluid but said that she had issues with her senses. She also said that the police officer must have smelled the lighter fluid because the officer told Timothy not to light a cigarette. Diane said she had seen Timothy earlier in the day and saw no bruising on his face at that time.

¶ 24   Pittsfield Deputy Chief Jennifer Thompson responded to the 911 call and found Timothy outside of Diane's apartment leaning against a grocery cart "with obvious injuries about his head and face." She added, "I could smell the odor of lighter fluid. His shirt and hair were both damp." She told Timothy not to light a cigarette. Thompson described Timothy as "kind of

- 6 -

scattered," which she said was normal in victims of violent crimes. Thompson said that Timothy told her he had been attacked by his daughter's boyfriend and that they had taken his car without his permission. Thompson said the inside of Timothy's apartment was "in disarray," and the couch and coffee table were pushed in an abnormal way. There was also a broken lamp. She found a crumbled and empty can of lighter fluid and thought there were signs of lighter fluid on the floor.

¶ 25        Timothy was subsequently taken to Illini Community Hospital and was diagnosed with contusions to his face, head, and neck, a broken nose, and broken ribs. His car was later located in Missouri. At the time, it was being driven by defendant's other girlfriend, Tonya Kittle, who was arrested. None of Timothy's missing items were found in the car.

¶ 26                          C. Verdict and Sentencing

¶ 27        Following trial, the jury acquitted defendant on counts IV (aggravated battery by strangulation) and VIII (armed violence) but found him guilty on all remaining counts. He was subsequently sentenced as follows: 20 years for armed robbery (count VII); 5 years each for possession of a stolen vehicle (count II), aggravated battery (count III) and intimidation (count V); and he was ordered to pay restitution. All sentences were to be served concurrently.

¶ 28        Defendant filed a motion to reconsider his sentence, arguing, *inter alia*, that the trial court failed to consider certain mitigating factors under section 5-5-3.1 of the Unified Code of Corrections (Unified Code) (730 ILCS 5/5-5-3.1 (West 2022)); the motion was denied on December 28, 2022. Although defendant did not file a timely notice of appeal, we subsequently allowed defendant's motion for leave to file late notice of appeal.

¶ 29        This appeal followed.

¶ 30                          II. ANALYSIS

¶ 31    On appeal, defendant argues that the trial court erred in denying his pretrial motion to bar certain testimony of Hannah English Gallagher and, alternatively, that defense counsel provided ineffective assistance. Each contention is addressed below.

¶ 32    A. Propriety of Trial Court's Pretrial Ruling on Motion to Bar

¶ 33    Defendant first argues the trial court erred in denying his pretrial motion to bar statements made by Hannah concerning defendant's attempt to strangle her the day prior to the September 8 incident. As the State notes and defendant acknowledges, this issue was not raised at trial or by posttrial motion. It is well settled that a criminal defendant who failed to object to an error and raise it in a posttrial motion has forfeited the error, precluding review of the error on appeal. *People v. Jackson*, 2022 IL 127256, ¶ 15; *People v. Herron*, 215 Ill. 2d 167, 175 (2005). Despite defendant's failure to raise this issue at trial or in his posttrial motion, he contends his procedural default should be excused and his claim considered under the first prong of the plain-error doctrine.

¶ 34    1. *Plain Error Doctrine*

¶ 35    Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court. Illinois Supreme Court Rule 615(a) (eff. Jan. 1, 1967). This court may review unpreserved issues under the plain-error doctrine, which we have explained as follows:

> "The plain-error doctrine allows a court to disregard a defendant's forfeiture and consider unpreserved error in two instances: '(1) where a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error and (2) where a clear or obvious error occurred and that error is so serious that

- 8 -

it affected the fairness of the defendant's trial and challenged the integrity of the judicial process.' " *People v. Matthews*, 2017 IL App (4th) 150911, ¶ 16 (quoting *People v. Belknap*, 2014 IL 117094, ¶ 48).

The doctrine, however, serves as a narrow and limited exception to the general rule of procedural default. *People v. Ahlers*, 402 Ill. App. 3d 726, 733 (2010).

¶ 36　　　　　Under the first prong of the plain error analysis, an error is prejudicial if " 'it occurred in a close case where its impact on the result was potentially dispositive.' " *People v. Stevens*, 2018 IL App (4th) 160138, ¶ 71 (quoting *People v. Sebby*, 2017 IL 119445, ¶ 68). "Thus, for purposes of the first prong, the claimed error—substantial or not—has to be of such a nature that it might have tipped the scales against the defendant." (Emphasis omitted.) *People v. Ely*, 2018 IL App (4th) 150906, ¶ 18. "In determining whether the evidence adduced at trial was close, a reviewing court must evaluate the totality of the evidence and conduct a qualitative, commonsense assessment of it within the context of the case." *Sebby*, 2017 IL 119445, ¶ 53. The burden of persuasion remains with the defendant. *Id.*

¶ 37　　　　　　　　　2. *Defendant Failed to Establish Prejudice*

¶ 38　　　　　Although our first step in the plain error analysis is typically to "determine whether any error occurred at all" (*Matthews*, 2017 IL App (4th) 150911, ¶ 17), assuming, *arguendo*, the statement was improperly admitted, we conclude that defendant could not establish prejudice for purposes of plain-error review. *People v. White*, 2011 IL 109689, ¶ 134 (Having found no prejudice, the court concluded "[t]here [was] no reason to go further for purposes of [an analysis] founded upon the closely balanced prong of plain error."); *People v. Davis*, 233 Ill. 2d 244, 273-75 (2009) ("assuming *arguendo*," there was error, the defendant could not establish prejudice for purposes of plain-error review).

¶ 39    Under the first prong of the plain error rule, a defendant establishes prejudice by showing "that the evidence is so closely balanced that the alleged error alone would tip the scales of justice against him, *i.e.*, that the verdict 'may have resulted from the error and not the evidence' properly adduced at trial." *Matthews*, 2017 IL App (4th) 150911, ¶ 26 (quoting *White*, 2011 IL 109689, ¶ 133, quoting *People v. Herron*, 215 Ill. 2d 167, 178 (2005)). What makes an error prejudicial in reference to the first prong of the plain error doctrine is the fact that it occurred in a close case, where its impact on the result was potentially dispositive. *Sebby*, 2017 IL 119445, ¶ 68 (citing *Herron*, 215 Ill. 2d at 187). As the supreme court has said, "[i]n determining whether the evidence adduced at trial was close, a reviewing court must evaluate the totality of the evidence and conduct a qualitative, commonsense assessment of it within the context of the case." *Id.* ¶ 53. This inquiry "involves an assessment of the evidence on the elements of the charged offense or offenses, along with any evidence regarding the witnesses' credibility." *Id*.

¶ 40    Plain error under the closely balanced prong "requires a commonsense, contextual analysis of the totality of the evidence." *People v. Belknap*, 2014 IL 117094 ¶ 49. Evidence may be closely balanced when a case turns on a credibility determination between conflicting testimony. See *Sebby*, 2017 IL 119445, ¶ 63; *People v. Naylor*, 229 Ill. 2d 584, 606-08 (2008) (finding evidence closely balanced where defendant's version of events conflicted with that of testifying officers and both accounts were credible). However, there is no credibility contest where one party's account is "unrefuted, implausible, or corroborated by other evidence." *People v. Montgomery*, 2018 IL App (2d) 160541, ¶ 31.

¶ 41    Initially, we think that the greatest potential prejudice flowing from the reference to the alleged strangulation the day before the events in this case is that the jury might be improperly persuaded to believe that Timothy was also strangled. In fact, the jury acquitted

defendant of that charge, which provides good reason to believe that the impact of the testimony was not significant.

¶ 42    Even so, defendant argues that Hannah's testimony otherwise unfairly prejudiced him "by portraying him as a 'bad man' that the jurors should punish, regardless of the weakness of the State's case or the presence of exculpatory evidence." In this regard, defendant argues that the evidence was closely balanced in large part because Timothy's testimony was uncorroborated as to how the incident occurred. Defendant argues there were no eyewitnesses to the alleged attack and further contends that Timothy was not credible. Defendant relies specifically on *Sebby* and *Naylor*, where the outcome of the case turned on how the factfinder resolved a "contest of credibility" between opposing versions of the events. *Sebby*, 2017 IL 119445, ¶ 61; *Naylor*, 229 Ill. 2d at 606-07. In addressing these competing views, the *Naylor* court commented:

> "Given these opposing versions of events, and the fact that no extrinsic evidence was presented to corroborate or contradict either version, the trial court's finding of guilty necessarily involved the court's assessment of the credibility of the two officers against that of defendant." *Naylor*, 229 Ill. 2d at 607.

¶ 43    As the *Sebby* court pointed out in its discussion of *Naylor*, "[w]e determined that because both versions were credible, the evidence was closely balanced." *Sebby*, 2017 IL 119445, ¶ 63. "We reach the same conclusion here." *Id.*

¶ 44    Unlike *Sebby* and *Naylor*, however, in this case, there were no opposing positions concerning what had transpired. Like *People v. Williams*, 2022 IL 126918, ¶ 61, defendant in this case did not testify, and the primary testimony came from the victim, Timothy, who stated that he was attacked and beaten up by defendant. In *People v. Anderson*, 407 Ill. App. 3d 662, 671 (2011), the court found the evidence was not closely balanced because the jury was not faced with two

equally credible versions of events. Here, defendant has presented no conflicting evidence or any evidence to suggest that he did not commit the alleged crimes. Moreover, defendant's criticisms that none of the State's witnesses were actually in the room when the altercation occurred is unconvincing and does not establish a position contrary to that of Timothy. Thus, there is no credibility contest between the State's witnesses and those of defendant.

¶ 45    The law is likewise clear that no credibility contest exists where one party's account is "unrefuted, implausible, or corroborated by other evidence." *People v. Scott*, 2020 IL App (1st) 180200, ¶ 51; *People v. Olla*, 2018 IL App (2d) 160118, ¶¶ 35-38 (finding the evidence was not closely balanced where, although defendant denied the victim's allegations, there was some corroboration). Here, although there were some variations in the testimony, the evidence presented by the State largely corroborated Timothy's testimony. In essence, Timothy testified that he wanted defendant to leave, that defendant said he would not leave, that defendant attacked him, and that he was injured as a result of that attack.

¶ 46    Diane and Hannah both testified that Timothy did not have any injuries to his face earlier in the day on September 8, and Hannah, Diane, and Deputy Chief Thompson all confirmed the presence of injuries after the claimed attack, as did Timonthy's medical records. Diane's testimony further corroborated Timothy's testimony that he immediately went to Diane's apartment after the attack and that he asked her to call the police. Timothy was at Diane's when Deputy Chief Thompson arrived. Given this corroboration, we conclude that this is not a case involving competing witness credibility.

¶ 47    Lastly, we note that, contrary to defendant's assertion, a credibility contest does not arise simply because a witness, here Timothy, was impeached. Illinois law provides that "[w]here a case does not involve competing witnesses and the jurors are not asked to determine 'relative

- 12 -

credibility,' the factfinder's responsibility to assess witness credibility does not automatically make the evidence closely balanced." *Scott*, 2020 IL App (1st) 180200, ¶ 51; see *People v. Hammonds*, 409 Ill. App. 3d 838, 861-62 (2011). This is exactly the case before this court.

¶ 48 We therefore conclude that defendant has failed to establish prejudice and, accordingly, he cannot satisfy the first prong of the plain error doctrine. As a result, we conclude that he has forfeited the issue challenging the trial court's ruling on the pretrial motion to bar. See, *e.g.*, *Ely*, 2018 IL App (4th) 150906, ¶ 21 (because prejudice was not established, the procedural forfeiture was honored).

¶ 49 B. Ineffective Assistance of Counsel

¶ 50 Alternatively, defendant argues trial counsel provided ineffective assistance. The sixth amendment guarantees a defendant the right to effective assistance of counsel at all critical stages of a criminal proceeding. U.S. Const., amend. VI; *People v. Hughes*, 2012 IL 112817, ¶ 44. A defendant's claim of ineffective assistance of counsel is analyzed under the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 689 (1984). *People v. Veach*, 2017 IL 120649, ¶ 29. To prevail, "a defendant must show that counsel's performance was (1) deficient and (2) prejudicial." *People v. Westfall*, 2018 IL App (4th) 150997, ¶ 61.

¶ 51 To establish deficient performance, the defendant must show "counsel's performance 'fell below an objective standard of reasonableness.' " *People v. Valdez*, 2016 IL 119860, ¶ 14 (quoting *Strickland*, 466 U.S. at 688). A defendant is only entitled to competent, not perfect, representation. *People v. Bradford*, 2019 IL App (4th) 170148, ¶ 14. " '[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. [Citation.]' "

(Internal quotation marks omitted.) *People v. Manning*, 241 Ill. 2d 319, 334 (2011) (quoting *Strickland*, 466 U.S. at 689).

¶ 52    Prejudice is established when a reasonable probability exists that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *People v. Evans*, 209 Ill. 2d 194, 219-20 (2004) (citing *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." (Internal quotation marks omitted.) *People v. Moore*, 2020 IL 124538, ¶ 29. "[T]here is a strong presumption of outcome reliability, so to prevail [on an ineffective assistance claim], a defendant must show that counsel's conduct 'so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.' " *People v. Pineda*, 373 Ill. App. 3d 113, 117 (2007) (quoting *Strickland*, 466 U.S. at 686). "Satisfying the prejudice prong necessitates a showing of actual prejudice, not simply speculation that defendant may have been prejudiced." *People v. Patterson*, 2014 IL 115102, ¶ 81.

¶ 53    "We review a defendant's claim of ineffective assistance of counsel in a bifurcated fashion, deferring to the trial court's findings of fact unless they are contrary to the manifest weight of the evidence, but assessing *de novo* the ultimate legal question of whether counsel was ineffective." *People v. Manoharan*, 394 Ill. App. 3d 762, 769 (2009). "Failure to satisfy either prong negates a claim of ineffective assistance of counsel." *People v. Hibbler*, 2019 IL App (4th) 160897, ¶ 88. If there is no prejudice, we need not decide whether counsel's performance was deficient. *People v. Evans*, 186 Ill. 2d 83, 94 (1999). In resolving issues related to counsel's performance, reviewing courts must consider the totality of counsel's conduct, not just an isolated incident. *People v. Hamilton*, 361 Ill. App. 3d 836, 847 (2005). We address each of defendant's contentions of error in turn, addressing alleged deficiencies and/or prejudice as needed.

¶ 54                                    1. *Failure to File Posttrial Motion*

¶ 55          Defendant initially argues that trial counsel was deficient for failing to file a posttrial motion preserving the prior objection to Hannah's statements concerning defendant purportedly choking her. As we have already addressed in our discussion of the plain error doctrine, assuming that admission of Hannah's statement was error, defendant cannot establish prejudice. Thus, we likewise decline to find ineffective assistance of counsel. *White*, 2011 IL 109689, ¶ 133 ("Plain-error review under the closely-balanced-evidence prong of plain error is similar to an analysis for ineffective assistance of counsel based on evidentiary error insofar as a defendant in either case must show he was prejudiced ***.").

¶ 56          For these reasons, we conclude trial counsel was not ineffective by failing to raise the trial court's denial of the motion to bar in a posttrial motion.

¶ 57                                    2. *Objection to Witness Statement*

¶ 58          Defendant next contends that trial counsel was ineffective for failure to object to hearsay testimony that purportedly improperly bolstered Timothy's account of events. According to defendant, trial counsel should have objected on hearsay grounds to testimony from witnesses Diane and Deputy Chief Thompson that defendant had beaten him up and taken his vehicle. The State, however, contends that the statements were admissible as "excited utterances."

¶ 59          We first examine the two statements at issue. First, Timothy's neighbor Diane testified:

> "[T]here was a loud banging at my door and I opened my door. It was [Timothy] at my door all panicky. He had marks all over his face. Clearly, you could tell he'd been beat up and he told me to call 911, he'd been robbed, and they took his vehicle.

So I stepped out, got on my cellular phone, tried to call 911. He was pretty erratic[ ], pretty upset."

¶ 60 Second, Deputy Chief Thompson, who arrived shortly thereafter, testified that Timothy had told her "he was attacked by his daughter Hannah's boyfriend and that they had taken his vehicle without his permission." Thompson added that Timothy "was kind of scattered which is not uncommon with victims of violent crime."

¶ 61 We cannot fairly address the argument that trial counsel should have lodged a hearsay objection without also exploring what exceptions to the hearsay rule might apply here. Illinois Rule of Evidence 801(c) (Oct. 15, 2015) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Generally speaking, hearsay evidence is not admissible. *Id.*; Rule 802 (eff., Jan. 1, 2011). However, it is well established that excited utterances or spontaneous declarations are an exception to the hearsay rule. *People v. Kinnerson*, 2020 IL App (4th) 170650, ¶ 30. An "excited utterance" is defined as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." *Id.* ¶ 31 (citing Illinois Rule of Evidence 803(2) (eff. April 26, 2012)).

¶ 62 To admit a statement under the excited utterance exception, a trial court must find that (1) there was "an occurrence sufficiently startling to produce a spontaneous and unreflecting statement," (2) the declarant lacked time to fabricate the statement, and (3) the declarant's statement relates to the circumstances of the startling occurrence. *Kinnerson*, 2020 IL App (4th) 170650, ¶ 31 (citing *People v. Sutton*, 233 Ill. 2d 89, 107 (2009)). When analyzing whether a hearsay statement is admissible as an excited utterance, courts should consider the totality of the circumstances. *Id.* "The totality of the circumstances analysis involves consideration of several

factors, including time, the mental and physical condition of the declarant, the nature of the event, and the presence or absence of self-interest." *Sutton*, 233 Ill. 2d at 107. "The period of time that may pass without affecting the admissibility of a statement [as an excited utterance] varies greatly." *Id.* "The critical inquiry with regard to time is whether the statement was made while the excitement of the event predominated." (Internal quotation marks omitted.) *Id.*

¶ 63    We find that the trial court, had it been presented with a timely objection to the testimony, may well have concluded that both of Timothy's statements reflected excited utterances made shortly after the alleged attack. Both statements were made "while the excitement of the event predominated." *Id.* Looking at the evidence, Timothy's statement to Diane came immediately after the hour-and-a-half-long incident ended. According to her, Timothy appeared panicked and "erratic," and she could tell that he had been beaten up. Likewise, the statement to Deputy Chief Thompson, which was made to her shortly after she arrived, was made at a time when Thompson described Timothy as "scattered"—a state of mind she attributed to many victims of violent crimes. Under these circumstances, we find that counsel was not ineffective for failing to object. These statements unquestionably constitute an excited utterance and are an exception to the hearsay rule.

¶ 64    Apart from being an excited utterance, we find further support for our conclusion that the statements are admissible as prior consistent statements because defendant challenged Timothy's credibility. Illinois cases have consistently held that evidence of statements made prior to trial for the purpose of corroborating testimony at trial is inadmissible. *People v. Emerson*, 97 Ill. 2d 487, 501 (1983); see *Lyon v. Oliver*, 316 Ill. 292, 303 (1925). However, as the supreme court noted in *Lyon*, "where it is charged that his story is a recent fabrication, or that he had some motive for testifying falsely, proof that he gave a similar account of the transaction when the

- 17 -

motive did not exist or before the effect of the account could be foreseen is admissible." *Lyon*, 316 Ill. at 303; see *People v. Clark*, 52 Ill. 2d 374, 389 (1972). This is exactly what defendant is arguing here—that Timothy should not be believed because he fabricated the story of the assault to put the blame on defendant. Indeed, this was the focus of defendant's opening statement. Timothy's testimony having been challenged from the outset as a fabrication, the door was opened to the introduction of his prior consistent statements.

¶ 65                                    3. *Failure to Tender Instructions*

¶ 66        Defendant next argues that counsel was ineffective for failing to tender certain jury instructions. Specifically, defendant contends that counsel should have tendered Illinois Pattern Jury Instructions, Criminal, Nos. 3.12, 3.14, 3.17 (approved Oct. 17, 2014) (hereinafter IPI Criminal Nos. 3.12, 3.14, 3.17), and a non-IPI instruction.

¶ 67        We begin by noting that it is well settled in Illinois that counsel's choice of jury instructions and the decision to rely on one theory of defense to the exclusion of others are a matter of trial strategy. *People v. Mister*, 2016 IL App (4th) 130180-B, ¶ 97; *People v. Douglas*, 362 Ill. App. 3d 65, 75 (2005). Accordingly, counsel's decision as to which jury instruction to tender supports a claim of ineffective assistance of counsel only if that choice is objectively unreasonable. *Mister*, 2016 IL App (4th) 130180-B, ¶ 97.

¶ 68        First, defendant argues that IPI Criminal No. 3.12, which concerns impeachment of a witness by a prior conviction, should have been given due to Timothy's and Hannah's prior convictions for drug-related offenses. Here, we note that Hannah's credibility was crucial to defendant's case, and it is reasonable to conclude that the decision to not tender IPI Criminal No. 3.12 was a matter of trial strategy. As we held in *Mister*, counsel's choice of jury instructions is a matter of trial strategy; to succeed on his claim, it was incumbent upon defendant to establish

that the decision to not tender the instruction was "objectively unreasonable." *Douglas*, 362 Ill. App. 3d at 75. Here, defendant argued that Hannah's testimony was credible on a number of points, *i.e.*, she had no recollection of seeing a knife; she had no recollection of seeing defendant "choke" Timothy; and she had no recollection of seeing defendant "douse" Timothy with lighter fluid. Tendering an instruction that diminished Hannah's credibility by highlighting her prior criminal convictions would not benefit defendant and it would, therefore, be objectively reasonable to decide not to tender it.

¶ 69 As to tendering the instruction in relation to Timothy, the court recognizes that tendering the instruction for one witness essentially puts it in play as to all witnesses with prior criminal convictions. Thus, it would have been objectively reasonable to not pursue this instruction as to Timothy because of its implications for Hannah's credibility. As an aside, we note that defendant's closing argument, which brought to light Timothy's prior convictions, effectively addressed any potential implications of his prior criminal convictions on his credibility.

¶ 70 Second, defendant contends that IPI Criminal No. 3.14, which addresses "proof of other offense or conduct," should have been given to counter the impact of Hannah's testimony that defendant attempted to strangle her the day prior to his attack on Timothy. However, we can quickly address this point because we have already concluded that there was no prejudicial error concerning the admission of Hannah's statement that defendant allegedly attempted to strangle her on the day before this incident. Given our conclusions discussed earlier, there was no need to tender IPI Criminal No. 3.14, so failing to do so is not error.

¶ 71 Third, defendant asserts that trial counsel was ineffective for failing to tender IPI Criminal No. 3.17, which concerns the testimony of an accomplice. For the same reasons stated in our discussion of No. 3.14, we conclude that trial counsel's decision to not tender the instruction

- 19 -

was not error. This instruction, which is intended to impact the so-called accomplice's credibility, would have negatively impacted Hannah's credibility, but defendant *relied on* her credibility in making his case that he was not guilty of choking, using a knife, or dousing Timothy with lighter fluid. This was a matter of trial strategy, so the failure to tender the instruction was not objectively unreasonable.

¶ 72    Fourth and finally, we find no err in counsel's failure to tender a non-IPI instruction stating that the jury could consider evidence that a witness (namely Hannah) was addicted to drugs at the time of the crime and that such information could be considered in judging her credibility. See, *e.g.*, *People v. Thompkins*, 121 Ill. 2d 401, 440 (1988); *People v. Franz*, 54 Ill. App. 3d 550, 555 (1977). As we have noted, because Hannah's credibility was a key aspect of defendant's defense, it was not "objectively unreasonable" for trial counsel to decline to tender the noted non-IPI instruction. We further find *People v. Steidl*, 142 Ill. 2d 204 (1991), significant. There, the trial judge refused to offer the defendant's tendered instruction on the inference from addiction. *Id.*, at 237-239. The defendant argued the instructions were necessary because the witness, whose testimony was crucial to the State, had admitted she was a drug addict. The supreme court specifically held it was not reversible error for the trial court to deny the tendered instruction where evidence of addiction was already before the jury, which could make its own determination of the believability of the witness. *Id.*

¶ 73    Here, as in *Steidl*, Hannah's addiction was in evidence via her own testimony. Moreover, as *Steidl* pointed out, although a defendant is allowed to cross-examine witnesses regarding drug use, a trial court is not required to instruct the jury on the unreliability of a drug addict's testimony. *People v. Armstrong*, 183 Ill. 2d 130, 146 (1998); *People v. Huffman*, 177 Ill. App. 3d 713, 725-28 (1988). As the *Steidl* court observed, " 'Jurors do not leave their common

sense behind when they enter court, and even in the absence of cautionary instructions they will ordinarily be aware of the factors which make some witnesses unreliable.' " *Steidl*, 142 Ill. 2d at 238.

¶ 74 For these reasons, we conclude that trial counsel was not ineffective in declining to tender the noted instructions and that any such decision by counsel involved trial strategy.

¶ 75 4. *Failure to Object to Instructions*

¶ 76 Defendant further contends that trial counsel erred by failing to object to an allegedly improper jury instruction relating to intimidation and an instruction defining armed robbery and armed violence.

¶ 77 As to the intimidation instruction, defendant contends that he was charged under section 12-6(a)(5) (720 ILCS 5/12-6(a)(5) (West 2020)), which involves a threat to "expose any person to hatred, contempt or ridicule," but the jury was instructed on section 12-6(a)(1) (720 ILCS 12-6(a)(1) (West 2020)), which relates to a threat to inflict physical harm on the person threatened. We conclude that this discrepancy was merely a typographical or scrivener's error, rather than a "decisional or judgmental" error. A "scrivener's error" or "clerical error" is one " 'resulting from a minor mistake or inadvertence, [especially] in writing or copying something on the record, and not from judicial reasoning or determination.' " (Emphasis omitted.) *Schaffner v. 514 West Grant Place Condominium Ass'n*, 324 Ill. App. 3d 1033, 1040, 1042 (2001) (quoting Black's Law Dictionary 563 (7th ed. 1999)).

¶ 78 Had the issue been raised, it could have been easily remedied at any time by the State amending the information. Illinois law is well settled that section 111-5 of the Code of Criminal Procedure of 1963 (725 ILCS 5/111-5 (West 2020)) allows the amendment of an indictment, information, or complaint at any time to correct a formal defect, including a

miswriting. *People v. Shipp*, 2011 IL App (2d) 100197, ¶ 21 (citing *People v. Flores*, 250 Ill. App. 3d 399, 401 (1993)). An amendment is permissible if the change is not material or does not alter the nature and elements of the charged offense. *Id*. Formal amendment is especially warranted where there is no resulting surprise or prejudice to the defendant or where the record clearly shows that the defendant was otherwise aware of the actual charge. *Id*.

¶ 79 Moreover, based on this record, we cannot say that defendant was surprised or prejudiced. First, although the original information referenced subsection (a)(5), the wording of that count clearly referenced intimidation by physical threat, *i.e.*, whereby defendant, with the intent to cause Timothy to disclose the location of his wallet, communicated "a threat to inflict physical harm on [Timothy] in that he doused [Timothy] with lighter fluid, held a lighter in his hand, put a knife to [Timothy's] neck, and told him he had one chance to tell him where the wallet was or he would kill him." This wording should have put defendant on notice that the grounds articulated for intimidation were truly based on subsection (a)(1).

¶ 80 Second, it is equally clear that defendant fully understood the intent of the original information because he specifically referenced the substance of subsection (a)(1) when moving for a directed verdict. Clearly, defendant was aware that the actual charge was under subsection (a)(1). In any event, had an objection been raised, the State would have resorted to section 111-5 and amended the original information. We find no error on this point.

¶ 81 Defendant further argues that it was error for trial counsel to fail to object to the instructions concerning armed robbery and armed violence. According to defendant, the two instructions given confused the jury, and as a result, both instructions should have been clarified to "specify that the 'dangerous weapon' at issue was a knife." Looking at the two instructions, we find no error. The instruction on "armed robbery" related to count VII, which asserted that

defendant committed armed robbery "while carrying a dangerous weapon on his person or about his person or while otherwise armed with a dangerous weapon, being a knife."

¶ 82　　　　Here, although the State sought to prove that defendant committed armed robbery with a knife, there was also evidence presented at trial that defendant doused Timothy with lighter fluid and threatened to set him on fire with a lighter or candle. Both the knife and the lighter fluid can qualify as a dangerous weapon. The term "dangerous weapon" is not defined and can refer to items other than a gun or knife, depending on the evidence. *People v. Hernandez*, 2016 IL 118672, ¶ 12. What constitutes a "dangerous weapon" presents a question of fact, not law. *People v. Ligon*, 2016 IL 118023, ¶ 21. "Dangerous weapon" includes "any object sufficiently susceptible to use in a manner likely to cause serious injury." *Id.* ¶ 22 (citing *People v. Skelton*, 83 Ill. 2d 58, 66 (1980)). This comprises not just objects that are *per se* dangerous, but objects that can be used in a dangerous manner. *Hernandez*, 2016 IL 118672, ¶ 12; see *People v. Dwyer*, 324 Ill. 363, 365 (1927) (distinguishing between an object "made for the purpose of destroying life" and an object that is dangerous in "the manner of its use").

¶ 83　　　　Here, the State could have plausibly argued that either the knife or the lighter fluid were dangerous weapons possessed by defendant. Because the argument could be made that the lighter fluid constituted a dangerous weapon, we find no error in the armed robbery instruction. Thus, while count VII of the amended information charging armed robbery specifically referenced defendant carrying or being otherwise armed with a knife, the evidence at trial would have supported an amendment concerning the manner in which the armed robbery occurred. Had defendant raised an objection, the State could have certainly amended its information accordingly under section 111-5(f), which authorizes the amendment of an information at any time because of

formal defects, including the use of alternative "allegations as to the acts, means, intents or results charged." 725 ILCS 5/111-5(f) (West 2020).

¶ 84    Indeed, the court in *People v. Nathan*, 282 Ill. App. 3d 608 (1996), found "the amendments to the indictment were formal in nature and permissible because they merely changed the *manner* in which defendant committed the offense." (Emphasis in original.) *Id*. at 611. According to this court, "The [State's amendment] did not alter any essential element of the indictment nor broaden its scope nor change the offense with which defendant was charged. The particular details of the means defendant allegedly used do not constitute essential elements of the offense of aggravated battery." *Id*. Given our ruling in *Nathan*, we conclude there was no error and, therefore, no ineffective assistance of counsel for failing to object to the tendered armed robbery instruction.

¶ 85    Similarly, we conclude there was no error regarding the armed violence instruction (which related to count VIII). The jury was clearly informed that a person commits armed violence when he commits the offense of aggravated battery by causing great harm while he carries on or about his person, or is otherwise armed with, a knife with a blade of at least three inches in length. This instruction tracks the armed violence statute (720 ILCS 5/33A-2(a) (West 2020)), as well as the definition of a dangerous weapon; a Category II weapon, *i.e.*, a "knife with a blade of at least 3 inches in length." See *Id*. § 33A-1(c)(1)-(2). Here, defendant was found not guilty of this charge, which eliminates any contention that defendant was prejudiced by the instruction. Even so, the instruction is accurate in its recitation of the law and reflects the charge against defendant.

¶ 86    We find no error in the two instructions given and conclude that any objection, had one been raised, would likely and properly have been denied.

¶ 87                    5. *Response to Jury Questions*

¶ 88 Defendant next argues that trial counsel committed error by failing to object to the trial court's response to the jury's questions posed during deliberations. After the case had been submitted to the jury, two questions were forwarded to the court. The first asked, "Can [a] charcoal lighter be used as a dangerous weapon," with the word "classified" written underneath the word "used," and the second asked, "Is armed violence considered only [a] knife crime?" In response, the trial court replied, "As to both questions, you have received all [of] the instructions of law that apply to this case. Please continue your deliberations."

¶ 89 Generally, a trial court must provide instruction when the jury has posed an explicit question or asked for clarification on a point of law arising from facts showing doubt or confusion. *People v. Baker*, 2022 IL App (4th) 210713, ¶ 65 (citing *People v. Averett*, 237 Ill. 2d 1, 24 (2010)). However, "under the appropriate circumstances, a circuit court may exercise its discretion to refrain from answering a jury's inquiries." (Internal quotation marks omitted.) *Id.* (quoting *People v. Reid*, 136 Ill. 2d 27, 39 (1990)). Appropriate circumstances include when (1) the jury instructions are readily understandable and sufficiently explain the relevant law, (2) further instructions would serve no useful purpose or could mislead the jury, (3) the jury's inquiry involves a question of fact, or (4) the court's answer would cause it to express an opinion that would likely direct a verdict one way or the other. *Id*. Again, we note that the armed robbery statute leaves "dangerous weapon" undefined (*Hernandez*, 2016 IL 118672, ¶ 12) and that a "dangerous weapon" includes "any object sufficiently susceptible to use in a manner likely to cause serious injury." *Ligon*, 2016 IL 118023, ¶ 22.

¶ 90 In this case, the trial court, with acquiescence of counsel, determined that the best response to the jury's questions was to state that the jury instructions are readily understandable

and sufficiently explain the relevant law. Examining the instructions given, we note that one instruction told the jury that:

> "A person commits the offense of armed robbery when he, while carrying on or about his person, or is otherwise armed with a dangerous weapon, other than a firearm, knowingly takes property from the person or presence of another by the use of force or by threatening the imminent use of force."

¶ 91 In this context, whether lighter fluid constituted a "dangerous weapon" was a question of fact for the jury. Moreover, there is no pattern jury instruction providing guidance as to the definition of a "dangerous weapon." We note that defendant has not argued that the lighter fluid could not be considered a dangerous weapon.

¶ 92 As to the second question concerning the knife, the jury was instructed: "A person commits the offense of armed violence when he commits the offense of aggravated battery by causing great bodily harm while he carriers on or about his person or is otherwise armed with a knife with a blade of at least 3 inches in length." The jury found for defendant on this count.

¶ 93 We conclude that defense counsel's failure to object to the trial court's response to the jury's two questions was not error. The court's response to the jury's two questions—that the jury instructions adequately apprised the jury of all the information it needed—is an appropriate response under the facts of this case.

¶ 94                    6. *Failure to Argue All Mitigating Factors*

¶ 95 Defendant next argues that counsel was ineffective for failing to completely argue all available mitigating evidence at his sentencing hearing. The "significant mitigating evidence" that defendant alludes to includes his purported mental illness and physical struggles, namely, his seizures. The Unified Code (730 ILCS 5/5-5-3.1, 5-5-3.2 (West 2022)) sets forth mitigating and

aggravating factors that the trial court must consider when determining an appropriate sentence. *People v. Brunner*, 2012 IL App (4th) 100708, ¶¶ 43-45. "Nonetheless, the seriousness of the offense, rather than any mitigating evidence, is the most important factor in sentencing." *People v. Foxx*, 2018 IL App (1st) 162345, ¶ 50. A reviewing court will presume that the trial court considered all relevant factors and any mitigating evidence presented (*People v. Jackson*, 2014 IL App (1st) 123258, ¶ 48) and may not substitute its judgment for that of the trial court merely because it would have weighed these factors differently. *People v. Wilson*, 2016 IL App (1st) 141063, ¶ 11. A sentence within the statutory guidelines provided by the legislature is presumed to be proper. *People v. Knox*, 2014 IL App (1st) 120349, ¶ 46.

¶ 96        Here, although there was evidence suggesting possible mental illness—defendant was said to hear voices—and seizures, there was no specific evidence of a diagnosis of either condition, and it is far from clear that either played any role in the attack. In fact, the seizures appeared to occur with some frequency and did not require medical treatment. As the trial court explained, it clearly took into consideration "the factors in mitigation." But in the end, it is the seriousness of the crime, and not the mitigating factors, that "is the most important factor in sentencing." *Foxx*, 2018 IL App (1st) 162345, ¶ 50. Here, the trial court concluded that, "a sentence to the department of corrections [is] required under the Class X but also with the other listed findings of guilty, it is necessary to deter others."

¶ 97        We conclude that defendant has failed to establish any prejudice resulting from a failure to list additional mitigating factors. Moreover, we consider counsel's decision not to argue these additional grounds to be a matter of strategy. A defendant's mental or psychological impairments are not inherently mitigating factors. *People v. Wheeler*, 2019 IL App (4th) 160937, ¶ 44. As the State pointed argued in its brief, trial counsel may have decided against focusing on

defendant's supposed mental illness because the trial court might have viewed it as suggestive that defendant had a higher likelihood to reoffend. Similarly, given our statement in *Wheeler*, trial counsel may not have mentioned defendant's seizures so as to concentrate on more meaningful mitigation factors.

¶ 98                                    7. *Cumulative Error*

¶ 99            Finally, defendant argues cumulative error, noting "where errors are not individually considered sufficiently egregious for an appellate court to grant the defendant a new trial, but the errors, nevertheless, create a pervasive pattern of unfair prejudice to the defendant's case, a new trial may be granted on the ground of cumulative error." *People v. Sims*, 2019 IL App (3d) 170417, ¶ 55 (*People v. Howell*, 358 Ill. App. 3d 512, 526 (2005)). "However, the cumulative errors that warrant such an extreme result must themselves be extreme." *Id*. (quoting *People v. Desantiago*, 365 Ill. App. 3d 855, 871 (2006)). "There generally is no cumulative error where the alleged errors do not amount to reversible error on any individual issue." *Id*. (quoting *People v. Green*, 2017 IL App (1st) 152513, ¶ 118). Having found that none of the errors alleged by defendant constituted reversible error, there is no cumulative error. See *Green*, 2017 IL App (1st) 152513, ¶ 118.

¶ 100                                   III. CONCLUSION

¶ 101           For the reasons stated, we affirm the trial court's judgment.

¶ 102           Affirmed.