**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 230071-U

Order filed October 9, 2024
_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-23-0071 Circuit No. 18-CF-2643 |
| JUAN C. CALDERON, | ) ) ) | Honorable Michael W. Reidy, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HETTEL delivered the judgment of the court.
Justices Brennan and Albrecht concurred in the judgment.
_____

**ORDER**

¶ 1    *Held*: (1) Counsel was not ineffective for failing to object to an accountability instruction. (2) The statement at issue was properly admitted as a statement by a coconspirator. (3) The court did not rely on an improper factor in sentencing defendant.

¶ 2    Defendant, Juan C. Calderon, appeals from his conviction for first degree murder. Defendant argues (1) counsel was ineffective for failing to object to the accountability jury instruction; (2) the Du Page County circuit court erred in admitting statements made by a coconspirator; and (3) the court relied on an improper factor in sentencing defendant. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        Defendant was charged with five counts of first degree murder (720 ILCS 5/9-1(a)(1),

(2), (3) (West 2018)). The charges alleged defendant, along with Fredi Bautista and Emilio

Guillen, shot and killed Alexander Nicholas on November 8, 2018.

¶ 5        The State filed a motion for a joint trial for defendant and Guillen. The State also filed a

pretrial motion *in limine* to admit several statements as statements made by coconspirators,

including a statement from Guillen encouraging defendant to shoot Nicholas. At the hearing on

the motions, the court asked whether the defenses put forth by defendant and Guillen would be

antagonistic. Counsel for defendant stated that he and Guillen's counsel had not shared their

strategies with each other. The court inquired whether either defendant made a statement to the

police implicating the other, which counsel denied. The court granted both motions. In

permitting the coconspirator statements, the court found there was circumstantial evidence of a

conspiracy because defendant and the coconspirators were in the vehicle together, exited the

vehicle together, returned to the vehicle together following the murder before absconding

together, and then destroyed evidence with the same common plan or design.

¶ 6        Defendant waived his right to a 12-panel jury and the joint trial proceeded with two 6-

member juries. The juries were instructed that in the event they remained in the courtroom while

the other defendant's attorney conducted cross-examination of a witness, the juries could

consider any evidence they heard. The court further instructed the juries, "[a]ny evidence which

is limited to one defendant should not be considered by you as to any other defendant." The

juries were instructed not to have "any discussions of any kind with any members of the other

jury."

¶ 7        At trial, Detective Daniel Herbert of the West Chicago Police Department was certified as an expert in gang crimes. Herbert testified the Latin Counts and Satan Disciples had been engaged in a longtime rivalry. He identified La Raza and Two Six as other gangs in the area. On November 9, 2018, Herbert responded to the discovery of a body. He identified the body as Nicholas. Herbert obtained video from surveillance cameras at a residence. The footage showed a vehicle park on the side of the road at approximately 11:15 p.m. on November 8, 2018. Four men exited the vehicle before approaching another man on the sidewalk. The five men stood around for approximately two minutes before they engaged in a brief physical altercation. Three of the men from the vehicle surrounded the victim while the fourth individual from the vehicle stood several feet away. The four men then ran back to the vehicle and drove away. The footage was admitted without objection.

¶ 8        Herbert identified Jesus Favela from the footage as one of the men exiting the vehicle. Herbert had prior interactions with Favela and knew he was affiliated with La Raza. During Favela's interview, he identified the three other men as defendant, Guillen, and Bautista. Herbert verified all three men were members of the Satan Disciples and made in-court identifications of Guillen and defendant.

¶ 9        During the course of his investigation, Herbert learned the group fled to an apartment complex in Aurora. Surveillance footage from the apartment complex was stipulated to and admitted into evidence. It showed four men enter the apartment shortly after midnight on November 9, 2018. Approximately 45 minutes later, two men exited a side door. One was holding a filled trash bag. The two men returned 10 minutes later without the trash bag. The following morning, the four men exited the apartment together shortly after 8 a.m.

¶ 10    The State next called Favela as a witness. Prior to beginning his testimony, counsel for Guillen again raised his objections to the admission of the coconspirator statements. Counsel explained he understood the court's earlier ruling, but wanted to ensure his objection was on the record. The court stated that any objections and arguments made during the motions *in limine* would stand throughout the entirety of the case. Counsel for defendant stated that he wished to adopt the other defense counsel's motions to obviate the need to object during the trial. The court stated, "[t]hat will be the same ruling."

¶ 11    Favela testified he was a member of La Raza. The night of the murder, he went to a bar at approximately 4 p.m. where he saw Guillen, Bautista, and defendant outside. Favela had known Bautista for 10 years and had met Guillen several times. Favela had never met defendant. Favela knew Guillen and Bautista were members of the Satan Disciples. The four men began consuming alcohol. Later, at approximately 11 p.m., Favela asked for a ride to a party. While the group was riding together, Bautista said "there goes that two-six." Bautista was referring to Nicholas who was affiliated with the rival Two Six gang. Bautista parked, exited the vehicle, and approached Nicholas. The other three men followed. Guillen and Nicholas exchanged insults before Guillen and Bautista physically attacked Nicholas. Guillen instructed defendant to "[m]uke him[,]" which Favela interpreted to mean "[s]hoot him." Defendant then approached Nicholas and put a gun to the back of his head and shot him. The group ran back to the vehicle and drove away. They drove to an apartment Favela was unfamiliar with. Defendant changed clothes, showered, and burned the clothes he had worn. Favela testified that earlier in the night at the bar, Bautista said he had a gun outside ready to shoot rival gang members.

¶ 12    Bautista testified on behalf of the State in exchange for a guilty plea to aggravated battery with a firearm and a sentence of 15 years' imprisonment. Bautista had known defendant and

4

Guillen since 2012. Bautista testified it was Favela who initially pointed out Nicholas while they were driving. Guillen punched Nicholas, and they began fighting. Nicholas began to overpower Guillen. Bautista saw defendant holding a gun. Guillen said "something along the lines of, Get him," before defendant shot Nicholas. Bautista had taken two Xanax earlier in the night which caused "[a] lot of blacking in, blacking out ***."

¶ 13    The State introduced several witnesses to establish that (1) a burn pile was found near the apartment identified by Favela, (2) a hat at the scene of the murder contained defendant's DNA, and (3) Guillen was apprehended attempting to sell his vehicle two days after the murder. The medical examiner also testified Nicholas died of a single gunshot wound to the head.

¶ 14    During closing arguments, defense counsel argued defendant did not shoot Nicholas and attempted to shift the blame to Bautista and Favela. Counsel described Bautista as "a liar and a man desperate to save his own skin." Counsel attacked Favela's credibility by pointing out Bautista and Favela were longtime friends, and that Favela did not remember everything from that night because of his drug and alcohol use. Counsel argued Favela's and Bautista's accounts of the incident were inconsistent with the physical evidence: namely, defendant could only have lost his hat during the altercation if he was involved in the fight, as opposed to standing to the side prior to shooting Nicholas as the State's witnesses testified. Counsel further argued defendant was the only one who needed to shower and change clothes, "[n]ot because he shot [Nicholas], but because he is much closer than the arm's length away that the shooter is."

¶ 15    Defendant's jury was given the following accountability instruction:

> "A person is legally responsible for the conduct of another person when, either before or during the commission of an offense, and with the intent to promote or facilitate the commission of an offense, he knowingly solicits, aids,

5

abets, agrees to aid, or attempts to aid the other person in the planning or commission of the offense.

The word conduct includes any criminal act done in furtherance of the planned and intended act."

Defendant's counsel did not object to the instruction.

¶ 16        Defendant's jury found him guilty of first degree murder but found the State did not prove that he personally discharged a firearm that proximately caused the death of another person. Defendant's counsel filed a motion for a new trial arguing the State did not prove his guilt beyond a reasonable doubt, the court committed error in granting the motion *in limine* regarding the coconspirator statements, and the joint trial was prejudicial. The court denied the motion.

¶ 17        At the sentencing hearing, defense counsel argued a lighter sentence was appropriate given the jury's finding that defendant did not personally discharge a firearm. The court discussed all relevant factors in aggravation and mitigation. While discussing whether defendant's conduct caused or threatened serious harm, the court stated:

"There is evidence that the Defendant was the responsible shooter; however, the jury did not find that. As it relates to the sentencing hearing, I am finding that he is accountable for the conduct that caused the death. That's all I'm finding. That's the only thing I'm finding in looking at his accountability. Undoubtedly, murdering someone or shooting someone is conduct that caused or threatens serious harm, whether you're the shooter or you're helping to do that."

Later while discussing other factors, the court again mentioned defendant's conduct caused or threatened serious harm . The court also noted defendant's criminal history included an incident

of aggravated battery for shooting someone in the arm when defendant was 16 years old. The court discussed at length defendant's conduct while incarcerated, noting defendant had been involved in multiple fights while in custody. The court additionally discussed defendant's gang involvement and the necessity of deterring others. The court sentenced defendant to 50 years' imprisonment. Defendant's motion to reduce the sentence was denied. Defendant appealed.

¶ 18                                      II. ANALYSIS

¶ 19        On appeal, defendant argues (1) counsel was ineffective for failing to object to the accountability jury instruction; (2) the court erred in admitting Guillen's statement instructing defendant to shoot Nicholas; and (3) the court improperly relied upon a factor inherent in the offense during sentencing. We will consider each argument in turn.

¶ 20                              A. Accountability Instruction

¶ 21        Illinois courts review claims of ineffective assistance of counsel under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Wise*, 2019 IL App (2d) 160611, ¶ 51. We review claims of ineffective assistance of counsel *de novo* if they were not raised in the circuit court. *People v. Lofton*, 2015 IL App (2d) 130135, ¶ 24. Under *Strickland*, counsel renders ineffective assistance when (1) counsel's performance falls below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's deficient performance, the results of the proceedings would have had a different outcome. *Id.* "The failure to satisfy either the deficiency prong or the prejudice prong of the *Strickland* test precludes a finding of ineffective assistance of counsel." *People v. Enis*, 194 Ill. 2d 361, 377 (2000). "A defendant bears the burden of proof on both elements of this test." *People v. Burks*, 343 Ill. App. 3d 765, 775 (2003). The failure to object to a jury instruction does not amount to

7

ineffective assistance where the instruction was proper. See *People v. Donlow*, 2020 IL App (4th) 170374, ¶ 81.

¶ 22    "Evidence, however slight, on accountability along with evidence of action as a principal offender is sufficient to support both instructions regardless of whether both theories were advanced in the State's case in chief." *People v. Batchelor*, 202 Ill. App. 3d 316, 331 (1990). "[E]vidence of accountability may be circumstantial." *People v. Beltran*, 327 Ill. App. 3d 685, 693 (2002). Where the State only seeks to prove a defendant was the principal and the defendant puts forward a defense he was not, an accountability instruction is often appropriate if the evidence shows the defendant was present at the time of the offense but someone else associated with the defendant may have been the principal. See *id.* at 692-93; *Batchelor*, 202 Ill. App. 3d at 331; *People v. Faysom*, 131 Ill. App. 3d 517, 527-28 (1985); *People v. Balls*, 95 Ill. App. 3d 70, 75 (1981); *People v. Thomas*, 72 Ill. App. 3d 28, 36 (1979); *People v. Addison*, 56 Ill. App. 3d 92, 99-100 (1977).

¶ 23    A defendant is legally accountable for another's conduct when, before or during the commission of a crime, and with the intent to promote or facilitate the commission of that crime, he solicits, aids, abets, agrees, or attempts to aid the other in the planning or commission of the crime. 720 ILCS 5/5-2(c) (West 2018). To establish that a defendant intended to promote or facilitate a crime, there must either be evidence demonstrating the defendant (1) shared the criminal intent of the principal offender or (2) there was a common criminal design. *People v. Velez*, 388 Ill. App. 3d 493, 512 (2009). Shared intent and common design are two distinct accountability schemes. *People v. Fernandez*, 2014 IL 115527, ¶ 21. The defendant must share the specific intent of the principal to be held accountable under the former. *Id.* Generally, intent is proved through circumstantial evidence and inferences. *People v. Jones*, 376 Ill. App. 3d 372,

383 (2007). Intent is normally a factual question for the jury. *People v. Testa*, 261 Ill. App. 3d 1025, 1031 (1994).

¶ 24    Under the common design rule, where the defendant and others engage in a common criminal design, the defendant is responsible for any criminal acts done in furtherance of the common design. *Fernandez*, 2014 IL 115527, ¶ 13. "Evidence that a defendant voluntarily attached himself to a group bent on illegal acts with knowledge of its design supports an inference that he shared the common purpose ***." *In re W.C.*, 167 Ill. 2d 307, 338 (1995). "[S]hared intent is *not* an element of the common-design rule." (Emphasis in original.) *People v. Phillips*, 2014 IL App (4th) 120695, ¶ 48. Instead, "the State need only prove the accused had the specific intent to promote or facilitate *a* crime. Once the State proves the accused intended to promote or facilitate *a* crime, it has established the accused's responsibility for *any* criminal act done in furtherance of the intended crime." (Emphases in original.) *People v. Houston*, 258 Ill. App. 3d 364, 369 (1994). Whether the defendant (1) was present during the offense, (2) fled from the scene, (3) maintained a close affiliation with others involved after, or (4) failed to report the crime are all factors normally considered in determining accountability. *People v. Perez*, 189 Ill. 2d 254, 267 (2000).

¶ 25    Here, while the State's theory of the case was that defendant was the principal actor, defense counsel argued defendant was not the shooter and sought to shift the blame to Bautista and Favela. Counsel was successful in doing so, as the jury found that defendant was not the shooter. Defendant argues there was no basis or proof to find him guilty as an accomplice because the State's evidence only pointed to him acting as the principal. Defendant therefore believes counsel's failure to object to the instruction constituted ineffective assistance. However, even where the State only seeks to prove a defendant was the principal, an accountability

9

instruction may be given where there is evidence to support it, "however slight." *Batchelor*, 202 Ill. App. 3d at 331. In the instant case, the evidence supported submission of the instruction under either accountability scheme.

¶ 26    Earlier in the night, Bautista stated he had a gun outside that was ready to shoot rival gang members. Later, the group saw Nicholas, a rival gang member, and confronted him. After exchanging insults, defendant, Bautista, Guillen, and Nicholas briefly fought before someone in the group shot Nicholas. The group then fled together and destroyed evidence. This evidence provided sufficient support for the inference that defendant shared the criminal intent as the principal to kill Nicholas and aided in the commission of that crime.

¶ 27    The instruction was also proper under the common-design scheme of accountability. A reasonable inference from the evidence is that defendant attached himself to a group bent on assaulting a rival gang member. Once defendant joined the common design to assault Nicholas, he was liable for "any criminal act done in furtherance of the planned and intended act." *Fernandez*, 2014 IL 115527, ¶ 18 (finding the defendant accountable for aggravated discharge of a firearm committed in furtherance of a burglary); see also *People v. Doolan*, 2016 IL App (1st) 141780, ¶ 53 (finding the defendant accountable for a fellow gang member kicking the deceased during a confrontation). Whether defendant had the specific intent to murder Nicholas is irrelevant. See *Phillips*, 2014 IL App (4th) 120695, ¶ 48. Further, all the relevant factors favored a finding of accountability and, therefore, supported submitting the accountability instruction to the jury. Defendant was present at the time of the crime, fled with the other three men, maintained a close affiliation with the others including spending the night at a nearby apartment with them and destroying evidence, and then failed to report the murder.

¶ 28    Because the instruction was properly given, defense counsel was not ineffective for failing to object. See *People v. Rahaman*, 2024 IL App (4th) 230105-U, ¶ 84 (holding that where a jury instruction was proper, counsel was not ineffective for failing to object to its inclusion).

¶ 29                              B. Statement Made by a Coconspirator

¶ 30    Defendant next argues Guillen's statement to defendant to shoot Nicholas was improperly admitted. Defendant argues that it (1) was improperly admitted hearsay as there was no proof of a conspiracy, and (2) violated his right to confront Guillen at the joint trial. The admission of coconspirator statements is reviewed for an abuse of discretion. *People v. Jaimes*, 2019 IL App (1st) 142736, ¶ 64. An abuse of discretion occurs where the "decision is arbitrary, fanciful, or unreasonable such that no reasonable person would agree with it." *People v. Caraga*, 2018 IL App (1st) 170123, ¶ 36.

¶ 31                                        1. Hearsay

¶ 32    "Hearsay evidence is an out-of-court statement offered to prove the truth of the matter asserted, and it is generally inadmissible due to its lack of reliability unless it falls within an exception to the hearsay rule." *People v. Olinger*, 176 Ill. 2d 326, 357 (1997). One such exception is the coconspirator exception, which permits admission of any act or declaration made by a coconspirator during the pendency of and in furtherance of the conspiracy. *People v. Kliner*, 185 Ill. 2d 81, 141 (1998).

¶ 33    The State must make an independent, *prima facie* evidentiary showing of the existence of a conspiracy between the declarant and the defendant. *Caraga*, 2018 IL App (1st) 170123, ¶ 39. The conspiracy may be established from circumstantial evidence. *Id.* The court may draw broad inferences from the evidence "because of the necessarily clandestine nature of conspiracies." *Id.* To make a *prima facie* showing of a conspiracy, the State must prove by a preponderance of the

11

evidence that: "(1) two or more persons intended to commit a crime; (2) they engaged in a common plan to accomplish the criminal goal; and (3) an act or acts were done by one or more of them in furtherance of the conspiracy." *People v. Leak*, 398 Ill. App. 3d 798, 825 (2010).

¶ 34    Here, defendant, Guillen, and Bautista were members of the same gang, and Nicholas was a member of a rival gang. The three gang members spent all day at a bar before they drove to a party as a group. When they drove past Nicholas, they stopped the vehicle and accosted Nicholas together. Following the murder, they all fled the scene and did not separate until the next day. Defendant burned his clothes and showered in an attempt to destroy evidence, while Guillen attempted to sell his vehicle for the same purpose. Based on this, when ruling on the State's motion *in limine*, the court determined the State proved the existence of a conspiracy and allowed the statement to be admitted, and we cannot say that decision was an abuse of the court's discretion.

¶ 35    Moreover, any alleged error in the admission of the statement was harmless. "Harmless error review applies where a [nonstructural] constitutional violation leads to erroneous admission of evidence." *People v. Smith*, 2022 IL App (1st) 190691, ¶ 103. "The test is whether it appears beyond a reasonable doubt that the error at issue did not contribute to the verdict obtained at trial." *In re Brandon P.*, 2014 IL 116653, ¶ 50. Here, the jury found defendant *did not* shoot Nicholas. Therefore, the fact that Guillen told defendant to shoot Nicholas did not contribute to the verdict.

¶ 36                              2. Right to Confront a Witness

¶ 37    Defendant next argues the admission of Guillen's statement violated defendant's right to confront Guillen at the joint trial. This issue was forfeited as it was not raised in the circuit court. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Defendant urges us to review this issue

12

pursuant to the plain error doctrine. "[T]he plain-error doctrine bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved error when either (1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence." *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005). It is necessary to determine first whether the hearsay statements were impermissibly admitted as there can be no plain error if there is no error. *People v. Johnson*, 218 Ill. 2d 125, 139 (2005).

¶ 38    A criminal defendant has the right to be confronted with the witnesses against him under the sixth amendment. U.S. Const., amend. VI. The confrontation clause prevents testimonial hearsay statements from being admitted unless the declarant is unavailable and the defendant has previously had a chance to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 68 (2004). Nontestimonial statements are not subject to the confrontation clause. *Id.* Coconspirator statements are not testimonial in nature. *Id.* at 56. Here, because the statement was properly admitted as a statement made by a coconspirator, defendant's right of confrontation was not violated, and there was no error.

¶ 39    However, even assuming *arguendo* defendant's confrontation clause rights were violated, he would still not be entitled to relief on this issue. Defendant only argues for reversal under the second prong of the plain error analysis. The second prong has been equated with structural error. *People v. Jackson*, 2022 IL 127256, ¶ 28. Structural errors are those which "erode the integrity of the judicial process and undermine the fairness of the defendant's trial." *Herron*, 215 Ill. 2d at 186. "An error is typically designated as structural only if it necessarily renders a criminal trial fundamentally unfair or an unreliable means of determining guilt or innocence." *People v. Thompson*, 238 Ill. 2d 598, 609 (2010). Generally, constitutional violations which result in the admission of erroneous evidence are not considered structural errors. *Brandon P.*,

13

2014 IL 116653, ¶¶ 48-50 (addressing the erroneous admission of a child victim's statements in violation of the confrontation clause); *People v. Patterson*, 217 Ill. 2d 407, 422-25 (2005) (addressing the erroneous admission of grand jury testimony in violation of the confrontation clause). Notably, the Supreme Court has indicated that the admission into evidence of a statement made by a codefendant may not amount to reversible error. See *Delaware v. Van Arsdall*, 475 U.S. 673, 682 (1986).

¶ 40    Here, defendant has not established his trial was fundamentally unfair. The jury determined defendant was not the shooter despite the statement from Guillen telling defendant to shoot him. The defenses were not antagonistic to each other, and each jury was provided proper limiting instructions. Further, the statement itself was not a highly prejudicial postarrest confession implicating defendant, and defendant had an opportunity to cross-examine the witnesses who claimed the statement was made. See *Kliner*, 185 Ill. 2d at 144-45.

¶ 41                                C. Sentencing

¶ 42    Lastly, defendant argues that the court erred in considering a factor inherent in the offense when sentencing him. Specifically, he contends that the court considered that his conduct caused or threatened serious harm. Defendant asks us to review this issue under the plain error doctrine as it was not properly preserved. *Supra* ¶ 37. Thus, we first determine whether any error occurred. *Johnson*, 218 Ill. 2d at 139.

¶ 43    The sentencing court "is presumed to know the law and apply it properly, and its decision regarding sentencing will be presumed to be proper absent an affirmative showing of error." *People v. Smith*, 176 Ill. 2d 217, 260 (1997). "[A] single factor cannot be used both as an element of an offense and as a basis for imposing 'a harsher sentence than might otherwise have been imposed.' " *People v. Morrow*, 2014 IL App (2d) 130718, ¶ 13 (quoting *People v.*

*Gonzalez*, 151 Ill. 2d 79, 84 (1992)). Causing or threatening serious harm is inherent in the offense of murder. *People v. Saldivar*, 113 Ill. 2d 256, 265 (1986). The sentencing court may consider the manner in which the victim's death was brought about, as well as the seriousness, nature, and circumstances of the offense. *Id.* at 271-72. "Even if the sentencing court mentions the improper fact, a defendant must show that the court relied on the particular improper fact when imposing the sentence." *People v. Valadovinos*, 2014 IL App (1st) 130076, ¶ 47. "It is unrealistic to suggest that the court, in sentencing defendant, must avoid mentioning that someone has died or risk committing reversible error ***." *People v. Benford*, 349 Ill. App. 3d 721, 735 (2004). But, generally, the court errs where it explicitly states it is relying on an improper factor. See *People v. McClellan*, 232 Ill. App. 3d 990, 1011-12 (1992).

¶ 44    We review the record as a whole, rather than focusing on a few isolated words or statements, to determine whether the court based the sentence on an improper factor. *People v. Dowding*, 388 Ill. App. 3d 936, 943 (2009). Where the court improperly relies upon a factor inherent in the offense, the sentence " 'will not be affirmed unless the reviewing court can determine from the record that the weight placed on the improperly considered aggravating factor was so insignificant that it did not lead to a greater sentence.' " *People v. Larson*, 2022 IL App (3d) 190482, ¶ 29 (quoting *People v. Heider*, 231 Ill. 2d 1, 21 (2008)).

¶ 45    Placing the court's statements in their proper context and reviewing the sentencing hearing as a whole under the presumption that the court knows and follows the law, we do not believe the court relied upon the improper factor as defendant suggests. Instead, the record reveals the court was aware that causing or threatening serious harm was a factor inherent in the offense, stating "[u]ndoubtedly, murdering someone or shooting someone is conduct that caused or threatens serious harm, whether you're the shooter or you're helping to do that." The court

15

also made clear that its discussion regarding this factor was in response to defense counsel's argument that a more lenient sentence was appropriate where the jury determined defendant was not the shooter. In responding to this argument, the court stated, "[t]here is evidence that the Defendant was the responsible shooter; however, the jury did not find that. As it relates to the sentencing hearing, I am finding that he is accountable for the conduct that caused the death. That's all I'm finding." The passing references to the improper factor are insufficient to overcome the presumption that the court's decision was proper when considered in context.

¶ 46 Even if the court relied in part upon an improper factor, we do not believe it resulted in a greater sentence. The court spent most of the hearing discussing the other relevant factors, and in particular, defendant's violent conduct while incarcerated, the need to deter others, and defendant's gang involvement. The court's lengthy discussion of these factors, in contrast to the passing references made to the factor inherent in the offense, demonstrate they vastly outweighed any reliance on an improper factor in the court's sentencing decision. Therefore, the court did not err in sentencing defendant.

¶ 47                                  III. CONCLUSION

¶ 48        The judgment of the circuit court of Du Page County is affirmed.

¶ 49        Affirmed.

16